**Thaddeus C. PULLA, Plaintiff,**

v.

**AMOCO OIL CO., Defendant.**

No. 4–91–CV–90085.

United States District Court,
S.D. Iowa,
Central Division.

Nov. 9, 1994.

I. John Rossi, Des Moines, IA, for plaintiff.

Charles E. Gribble, Pamela J. Prager, Whitfield & Eddy P.L.C., Patricia A. Shoff, Jo Ellen Whitney, Sharon K. Malheiro, Davis Hockenberg Wine Brown Koehn & Shors, Des Moines, IA, Michael A. Warner, Condon A. McGlothlen, Seyfarth Shaw Fairweather & Geraldson, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER DENYING AMOCO'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW, AND FOR NEW TRIAL OR REMITTITUR

BENNETT, District Judge.

### TABLE OF CONTENTS

I. PROCEDURAL BACKGROUND AND INTRODUCTION .................... 845
 A. Introduction ...................................................... 845
 B. Summary Of Facts ................................................ 847
 C. Amoco's Challenge To The Jury Verdict .............................. 847
 D. Chart Of Issues, Waivers, And Disposition On The Merits ............. 848
II. ANALYSIS........................................................... 850
 A. Preservation Of Errors ............................................ 850
 1. Preservation Of Error And Rule 50 Motions ...................... 851
 a. Reassertion Of A Rule 50 Motion ............................ 852
 b. Lack Of Reassertion Of Amoco's Rule 50 Motion ............... 855
 2. Objections To Jury Instructions ................................. 856
 a. Necessity, Purpose, And Effect Of Objections And Failure To
 Object ..................................................... 857
 b. Timing, Procedure, And Specificity Required For Objections.... 858
 c. Amoco's Objections Or Lack Thereof .......................... 859

 i. The Elements Of Invasion Of Privacy ...................... 859
 ii. The Malice And Ratification Instructions On Punitive Damages .......................................................... 860
 B. The Appropriate Standard For Determining Amoco's Post-Trial Motions.... 862
 C. Attack On The Jury's Verdict Finding An Invasion Of Privacy.......... 865
 1. The Elements Of Invasion Of Privacy Under Iowa Law ............. 865
 2. Proof Presented ................................................ 866
 a. Amoco's "Legitimate Objective" And The Degree Of Intrusion.... 866
 b. The Degree Of Injury......................................... 867
 c. The Evidence Of Injury Here ................................. 869
 d. Ratification Requirement And Evidence Presented ............... 870
 D. Punitive Damages ................................................ 873
 1. The Purpose Of Punitive Damages Under Iowa Law ............... 873
 2. Actual Damages As A Prerequisite To Punitive Damages ........... 874
 3. Malice ........................................................ 878
 a. "Malice" Defined ............................................ 879
 b. What Conduct Is Sufficient To Show Malice? ................... 880
 c. Sufficiency Of Evidence Of Malice In This Case................. 881
 4. Ratification And Punitive Damages ............................... 882
 5. Was The Punitive Damage Award Excessive? ...................... 882
 E. Remittitur ...................................................... 889
III. CONCLUSION ...................................................... 891

Challenging a jury award of $2 in actual damages and $500,000 in punitive damages for invasion of privacy, defendant employer has filed post-trial motions for judgment as a matter of law, and for new trial or remittitur. The employee's claim was based on the employer's examination of the employee's credit card records to attempt to determine whether the employee had been abusing sick leave.

The employer makes several challenges to the jury's verdict finding an invasion of privacy asserting that there is insufficient evidence of the elements of the tort to sustain the verdict for the employee on that claim. The employer also makes several challenges to the jury's award of punitive damages based on sufficiency of evidence. Finally, the employer challenges the punitive damage award as excessive and in violation of due process. The motions require the court to consider whether the employer has preserved the errors it now complains of in its post-trial motions because the employer failed to renew a motion for judgment as a matter of law, first made at the conclusion of plaintiff's case, at the close of all evidence as required by *Fed.R.Civ.P.* 50. The court must also consider, pursuant to *Fed.R.Civ.P.* 51, whether the employer preserved the alleged errors it now complains of in its post-trial motions in its objections to relevant jury instructions or failed to preserve error by failing to object to instructions. Despite its conclusions that errors have not been properly preserved, the court nonetheless examines the merits of each of the employer's claims by scrutinizing the sufficiency of the evidence in support of the jury's verdict. Finally, in response to the employer's post-trial assertion that the jury award of $500,000 in punitive damages was excessive, the court conducts the constitutionally required post-trial review of the punitive damage award.

■ Before turning to the arguments presented here, the court briefly notes that the importance of the right of privacy has long been recognized in this country.

> Of all the rights of the citizen, few are of greater importance or more essential to [the citizen's] peace and happiness than the right of personal security, and that involves, not merely protection of [the citizen's] person from assault, but exemption of [the citizen's] private affairs, books, and papers from the inspection and scrutiny of others. Without the enjoyment of this right, all others would lose half their value.

*Interstate Commerce Comm'n v. Brimson,* 154 U.S. 447, 14 S.Ct. 1125, 38 L.Ed. 1047 (1894) (citation and internal quotation marks omitted).[1] For this reason, the Fourth

---

1. This and other quotations herein have been redacted to be gender neutral.

Amendment to the United States Constitution protects the individual from unreasonable intrusions into private affairs by agents of the government:

> It cannot be too often repeated ... that the principles that embody the essence of constitutional liberty and security forbid all invasions on the part of the government and its employees of the sanctity of a [person's] home, and the privacies of [a person's] life....

*Id.* In commenting on this right, Justice Holmes observed:

> Anyone who respects the spirit as well as the letter of the Fourth Amendment would be loath to believe that Congress intended to authorize one of its subordinate agencies to sweep all our traditions into the fire and to direct fishing expeditions into private papers on the possibility that they may disclose evidence of crime. We do not discuss the question whether it could do so if it tried, as nothing short of the most explicit language would induce us to attribute to Congress that intent.

*Federal Trade Comm'n v. American Tobacco Co.,* 264 U.S. 298, 305–06, 44 S.Ct. 336, 337, 68 L.Ed. 696 (1924) (citation omitted). For similar reasons, the vast majority of states recognize one or more forms of the common law tort action for invasion of privacy to protect individuals from invasion of their privacy by other private citizens or non-governmental entities.[2] The common-law tort remedy is intended to protect "the right of an individual to be let alone, to live a life of seclusion, to be free from unwarranted publicity." *Bremmer v. Journal–Tribune Publishing Co.,* 247 Iowa 817, 821, 76 N.W.2d 762, 764 (1956). This lawsuit involves the form of the tort known as "intrusion upon seclusion," which has been recognized under Iowa common law. *Stessman v. Am. Black*

*Hawk Broadcasting Co.,* 416 N.W.2d 685, 687 (Iowa 1987); *Winegard v. Larsen,* 260 N.W.2d 816, 822 (Iowa 1977).

## I. PROCEDURAL BACKGROUND AND INTRODUCTION

### A. Introduction

Plaintiff Thaddeus C. Pulla filed this action against his employer Amoco Oil Company on February 20, 1991, alleging age discrimination in the form of demotion and retaliation in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.,* and pendant state law claims, including a claim of invasion of privacy. On January 18, 1994, the parties filed a consent to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and the case was referred to me.[3]

After discovery and dispositive motions, this matter proceeded to trial before a jury on three of Pulla's claims on May 3, 1994. Those claims were the two age discrimination claims of demotion and retaliation and the invasion of privacy claim. After the conclusion of the presentation of Pulla's case on the afternoon of May 5, 1994, on the morning of May 6, 1994, Amoco moved for judgment as a matter of law on all of Pulla's claims pursuant to *Fed.R.Civ.P.* 50. The court reserved ruling on that motion. Strangely, Amoco did not reassert the motion for judgment as a matter of law at the conclusion of its own case at the end of the day. The court held the first of two jury instruction conferences on the record on the afternoon of May 6, 1994, and the second following the weekend break on the morning of May 9, 1994. The jury was instructed and the case was submitted to them on the morning of May 9, 1994.

---

**2.** The Restatement (Second) of Torts § 652A defines the forms of the common-law tort of invasion of privacy as follows:

> (1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.
> (2) The right of privacy is invaded by
> (a) unreasonable intrusion upon the seclusion of another ...; or
> (b) appropriation of the other's name, or likeness ...; or

> (c) unreasonable publicity given to the other's private life ...; or
> (d) publicity that unreasonably places the other in a false light before the public....

**3.** On August 30, 1994, I was appointed United States District Court Judge for the Northern District of Iowa. All federal district judges and magistrate judges in Iowa are cross-designated to preside over matters in both the Northern and Southern Districts.

The jury returned a verdict on the afternoon of May 9, 1994, finding in favor of Amoco and against Pulla on all claims except the invasion of privacy claim.[4] On the invasion of privacy claim, the jury awarded $1 in actual damages for past mental pain and suffering, and $1 in actual damages for future mental pain and suffering (reduced to present value). The jury also answered in the affirmative a special interrogatory on punitive damages asking if the jury found by a preponderance of the clear, convincing, and satisfactory evidence that Amoco's conduct in invading Pulla's privacy constituted willful and wanton disregard for Pulla's rights. The jury awarded Pulla $500,000 in punitive damages. The jury also answered in the affirmative a special interrogatory asking if the jury found that Amoco's conduct had been directed specifically at Pulla.[5] Judgment was entered on the jury's verdict on May 10, 1994.

Amoco filed the present post-trial motions challenging the jury's verdict on May 20, 1994. Amoco filed its overlength brief, with the permission of the court, on May 24, 1994. Pulla resisted Amoco's motions on June 1, 1994. Hearing was held on Amoco's motions June 21, 1994. Pulla was represented at the

---

4. Pulla has not made any post-trial challenges to the verdicts against him and in favor of Amoco, so the court will not address any issues pertaining to the ADEA claims here.

5. The purpose of this special interrogatory, pursuant to Iowa Code § 668A.1(2), is to fix the amount of the punitive damages award that shall be paid to the plaintiff, and what amount if any of that award shall be paid to a civil reparations trust fund administered by the state court administrator. If the jury answers the special interrogatory in the affirmative, the full amount of the punitive or exemplary damages awarded are paid to the claimant. Iowa Code § 668A.1(2)(a). If the jury's answer is negative, after payment of all applicable costs and fees, an amount not to exceed twenty-five percent of the punitive or exemplary damages awarded may be ordered paid to the claimant, with the remainder of the award to be ordered paid into the civil reparations trust fund. Iowa Code § 668A.1(2)(b). Neither party has raised a challenge to the special interrogatory or to the jury's finding in response to it. However, it is interesting to note that Iowa is one of only eight states to have passed legislation requiring payment of some portion of punitive damages to the state or state-sponsored funds. The rationale underlying Iowa's punitive damage legislation is "that 'a plaintiff is a fortuitous beneficiary of a punitive damage award simply because there is no one else·to receive it.'" *Spaur v. Owens–Corning Fiberglas Corp.*, 510 N.W.2d 854, 869 (Iowa 1994) (citing *Shepherd Components, Inc. v. Brice Petrides–Donohue & Assocs., Inc.*, 473 N.W.2d 612, 619 (Iowa 1991)). Section 668A.1 "was designed to divert a portion of a resulting punitive damage award to a public purpose." *Spaur*, 510 N.W.2d at 869 (citing *Fernandez v. Curley*, 463 N.W.2d 5, 8 (Iowa 1990)).

The other seven states with similar punitive damage legislation are: Colorado (Colo.Rev.Stat. s 13–21–102[4] [1987] ), Florida (Fla.Stat. s 768.73[2][b] [1993 Supp.] ), Georgia (Ga.Code Ann. s 51–12–5.1[e][2] [1993 Supp.] ), Missouri (Mo.Rev.Stat. s 537.675[2] [1992 Supp.] ), New York (N.Y.Civ.Prac.L. & R. s 8701 [McKinney 1993 Supp.] ), Oregon (Or.Rev.Stat. s 18.540[1] [1991] ) and Utah (Utah Code Ann. s 78–18–1[3] [1992] ).

Four of the eight states have addressed the constitutionality of such provisions. Two courts have held such statutes to be unconstitutional. *Kirk v. Denver Pub. Co.*, 818 P.2d 262 (Colo.1991) (Colorado Supreme Court held that a statute requiring payment of one-third of the punitive damages to the state general fund was an unconstitutional taking of private property without just compensation); *McBride v. General Motors Corp.*, 737 F.Supp. 1563 (M.D.Ga.1990) (Federal district court held unconstitutional, in violation of the excessive fines provision of the Eighth Amendment of the United States Constitution, a provision requiring 75 percent of a punitive damage award, in product liability cases only, be paid to the state treasury). Three other courts have upheld the constitutionality of such statutes. *Gordon v. State*, 585 So.2d 1033 (Fla.Dist.Ct.App. 1991) (Florida appellate court upheld the constitutionality of Florida statute requiring payment of 60 percent of the punitive damage award to the state general revenue fund or public medical assistance trust fund depending on the type of cause of action. The court found no unconstitutional taking of property without due process because a plaintiff had no constitutionally protectable right to recover damages), *aff'd*, 608 So.2d 800 (Fla.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1647, 123 L.Ed.2d 268 (1993); *Shepherd Components, Inc. v. Brice Petrides–Donohue Assocs., Inc.*, 473 N.W.2d 612 (Iowa 1991) (Iowa Supreme Court upheld the constitutionality of § 668A.1(2)(b)); *Mack Trucks, Inc. v. Conkle*, 263 Ga. 539, 436 S.E.2d 635 (1993) (Georgia Supreme Court upheld statute providing that 75 percent of punitive damage award paid into state treasury only in product liability cases did not violate equal protection clause of Fourteenth Amendment nor constitute a taking under Fifth and Fourteenth Amendments). The differing results seen in the *Conkle* and *McBride* decisions regarding Georgia's statute can be explained in part by the fact that the two respective courts analyzed the Georgia statute provision under different federal constitutional amendments.

trial and the hearing on Amoco's motions by counsel I. John Rossi, of Des Moines, Iowa. Amoco was represented at the trial and at the hearing by counsel Charles E. Gribble, from Whitfield & Eddy, P.L.C., of Des Moines, Iowa. Pursuant to the court's direction, the parties filed supplemental briefs concerning the motions, Amoco on July 26, 1994, and Pulla on August 8, 1994. This matter is ·now fully submitted.

### B. Summary Of Facts

In response to a post-trial motion for judgment as a matter of law, the court must deny the motion if reasonable jurors could differ as to the conclusion that could be drawn from the evidence. *McAnally v. Gildersleeve,* 16 F.3d 1493, 1500 (8th Cir.1994); *Minneapolis Community Dev. Agency v. Lake Calhoun Assoc.,* 928 F.2d 299, 301 (8th Cir.1991); *Atlas Pile Driving Co. v. DiCon Fin. Co.,* 886 F.2d 986, 989 (8th Cir.1989). A brief survey of the facts relevant to Pulla's invasion of privacy claim, as a reasonable jury could have found them from the evidence presented, is therefore appropriate to place in context the court's ruling on both the motion for judgment as a matter of law, in which the court must defer to a reasonable jury's verdict, ·*Tilson v. Forrest City Police Dep't,* 28 F.3d 802, 806 (8th Cir.1994); *McAnally,* 16 F.3d at 1500, and the motion for new trial, in which the court makes its own evaluation of the evidence. *White v. Pence,* 961 F.2d 776, 780 (8th Cir.1992).

A reasonable jury could have found the following. Pulla was employed by Amoco beginning in 1963, and had been continuously employed by Amoco from 1974. Pulla was eventually promoted to the position of lead representative in the credit card sales authorization and investigation department. A co-employee of Pulla's, Ms. Leckband, because she was "mad" at Pulla for what she believed to be his abuse of sick leave, reviewed the records of Pulla's Amoco credit card to try to verify that he had not been sick on days he had claimed· sick leave. Ms. Leckband brought her findings to the attention of Pulla's and Leckband's supervisor, Mr. Wieczorek. Mr. Wieczorek told Ms. Leckband that her conduct in reviewing Pulla's credit card records was not appropriate and must not be repeated, but immediately asked another employee, Diana Scott, to make a copy of Pulla's credit card records, and then delivered the copy himself to Amoco's personnel department to be placed in Pulla's personnel records. Pulla learned that his credit card records had been reviewed in telephone calls from other Amoco employees, and made further investigations. As the result of what he discovered about review and use of his credit card records, Pulla suffered feelings of being watched all the time, and believes that the credit card records made available to third parties in his personnel file unfairly cast him in a bad light. Mr. Wieczorek referred to absences Ms. Leckband had tried to demonstrate were improper in a subsequent employee evaluation of Pulla, and Pulla was singled out for a requirement that he obtain certification from a company doctor of any sick leave claims he subsequently submitted.

### C. Amoco's Challenge To The Jury Verdict

Amoco has made the following challenges to the jury's verdict in its post-trial motions. First, Amoco attacks the jury's verdict finding an invasion of privacy. Specifically, Amoco argues that there is insufficient evidence that Pulla suffered any anguish or suffering as the result of any invasion of his privacy to support his claim, that Amoco had a legitimate interest in reviewing the information in question here, that the evidence shows that Amoco's means were, not objectionable to a reasonable person, and that there is insufficient evidence to find that Amoco ratified any wrongful conduct. Amoco also argues that the evidence of injury that Pulla presented was insufficient as a matter of law and that the court instructed on the wrong standard for finding an injury. Amoco also challenges the award of punitive damages in this case. Specifically, Amoco argues that there is insufficient evidence of malice or of ratification of wrongful conduct on the part of Amoco to support the jury's award of punitive damages in this case. Amoco also argues that there are no actual damages awarded here and that an award of actual damages is a precondition to an award of punitive damages under Iowa law. Final-

ly, Amoco argues that the punitive damage award in this case is excessive and violative of due process. The court must conduct the constitutionally required post-trial review of the excessiveness of a punitive damage award, but the court concludes that post-trial review of all of Amoco's claims of error, with the exception of the issue of ratification of the alleged invasion of privacy, have been waived by failure to assert those claims of error in a timely motion for judgment as a matter of law or by failure to raise adequate objections to relevant jury instructions. In the alternative, the court conducts the appropriate review to determine whether Amoco is entitled to judgment as a matter of law or to a new trial, and concludes that Amoco is not entitled to post-trial relief under either standard.

### D. Chart Of Issues, Waivers, And Disposition On The Merits

The chart that follows provides a concise statement of Amoco's challenges to the verdict in this case, when they were raised, whether or not they have been waived, and how the court disposes of them on the merits to help clarify the issues discussed more fully below.

**Issues, Waivers, And Disposition**

| Amoco's Challenge | When Raised | Waiver And Grounds | Disposition On The Merits |
|---|---|---|---|
| **Invasion Of Privacy:** | | | |
| 1. Sufficiency of Evidence: | | | |
| a. Anguish or suffering | May 6 Motion For Judgment As A Matter Of Law at conclusion of Pulla's case: "There's not testimony in the record to establish that the review of the credit card records caused any anguish or suffering. … The invasion of privacy [claim] should not be submitted to the jury." Post-trial Motions: "Pulla has failed to establish that any intrusion caused mental anguish and suffering." | Not reasserted at close of all evidence, therefore waived pursuant to *Fed. R.Civ.P.* 50. Never asserted in objections to jury instructions, therefore waived pursuant to *Fed. R.Civ.P.* 51.<br><br>Untimely reassertion, therefore waived pursuant to *Fed.R.Civ.P.* 50. | *Rule* 50: Sufficient evidence of injury for reasonable jury to find for Pulla from Pulla's feelings of being watched, and humiliation or embarrassment from awareness that several employees knew his records had been reviewed, records were placed in personnel file and unfairly cast him in bad light, requirement that he alone report to company doctor for review of sick leave request. Injuries were of kind that normally result from invasion and are normal and reasonable in extent.<br>*Rule* 59: Evidence is sufficient on court's review to preclude new trial. |
| b. Amoco's legitimate interest | Post-Trial Motions: "Amoco had a legitimate interest in obtaining the information." | Waived pursuant to *Fed. R.Civ.P.* 50 and 51 as never previously asserted. | *Rule* 50: Sufficient evidence for jury to find that Amoco's intrusive method of using confidential records for purpose for which they were never intended, surreptitiously, without notice to, or consent or knowledge of, cardholder outweighs any legitimate objective. Amoco employee with managerial capacity testified to his belief that conduct of the kind here was wrong or illegal.<br>*Rule* 59: Evidence is sufficient on court's review to preclude new trial. |

| Issues, Waivers, And Disposition | | | |
|---|---|---|---|
| **Amoco's Challenge** | **When Raised** | **Waiver And Grounds** | **Disposition On The Merits** |
| c. Amoco's means were not objectionable | Post–Trial Motions: "The means of determining whether or not Pulla was properly using sick leave could not be objectionable to a reasonable [person]." | Waived pursuant to *Fed. R.Civ.P.* 50 and 51 as never previously asserted. | *Rule* 50: Sufficient evidence for jury to find that Amoco's intrusive method of using confidential records for purpose for which they were never intended, surreptitiously, without notice to, or consent or knowledge of, the cardholder would be offensive to a reasonable person. Amoco managerial employee testified to his belief that such conduct was wrong or illegal.<br>*Rule* 59: Evidence is sufficient on court's review to preclude new trial. |
| d. Ratification | May 9 Jury Instruction Conference: "As to Instruction Number 23 on ratification, the defendant would object to this instruction on the basis there's no evidence in the record on which the jury can determine that, in fact, the act had been ratified." | Waived pursuant to *Fed. R.Civ.P.* 50 as not previously asserted in motion for judgment as a matter of law, but preserved for consideration on a *Rule* 59 motion for new trial by objection to relevant jury instruction (No. 23). | *Rule* 50: Sufficient evidence for reasonable jury to find Wieczorek had managerial capacity and ratified or approved Leckband's wrongful conduct by engaging in similar conduct when he had another employee copy records and then delivered them himself to the personnel department. Wieczorek's conduct itself constituted wrongful acts by an employee with managerial capacity.<br>*Rule* 59: Evidence is sufficient on court's review to preclude new trial. |
| 2. Incorrect standard for injury | Post–Trial Motions: The law requires a "high degree" of anguish or "severe emotional distress." | Never previously raised, therefore waived pursuant to *Fed.R.Civ.P.* 50 & 51. | *Rule* 50: Reasonable jury could find injuries identified in Invasion of Privacy issue 1.a. were of kind that normally results from invasion and are normal and reasonable in their extent.<br>*Rule* 59: Cases cited by Amoco do not sustain proposition that this is the law in every jurisdiction. Proper standard is found in Restatement (Second) of Torts § 652H which does not require extreme injury, but injury that normally results from invasion and is normal and reasonable in its extent. |

| Issues, Waivers, And Disposition | | | |
|---|---|---|---|
| **Amoco's Challenge** | **When Raised** | **Waived And Grounds** | **Disposition On The Merits** |
| **Punitive Damages:** | | | |
| 1. Sufficiency of Evidence: | May 6 Jury Instruction Conference: Re: Instructions Nos. 26 & 28: "not sufficient evidence in the records to justify submitting those instructions." | Waived pursuant to *Fed. R.Civ.P.* 50 as not raised in motion for judgment as a matter of law. Waived pursuant to *Fed.R.Civ.P.* 51 as not sufficiently specific to preserve errors complained of in post-trial motions. | (See below.) |
| a. Of Malice | Post–Trial Motions: "There was insufficient evidence to support a finding of malice in awarding punitive damages." | Waived pursuant to *Fed. R.Civ.P.* 50 as not raised in motion for judgment as a matter of law. Waived pursuant to *Fed.R.Civ.P.* | *Rule* 50: Sufficient evidence for reasonable jury to conclude Leckband acted with actual malice because her conduct was motivated by ill |

| Issues, Waivers, And Disposition | | | |
|---|---|---|---|
| Amoco's Challenge | When Raised | Waived And Grounds | Disposition On The Merits |
| | | 51 as not sufficiently specific to preserve errors complained of in post-trial motions. | will in examining Pulla's confidential records. Sufficient evidence of legal malice in Wieczorek's continuation of conduct acknowledged to be wrong. *Rule* 59: Evidence is sufficient on court's review to preclude new trial. |
| b. Of Ratification | May 9 Jury Instruction Conference: "As to Instruction Number 23 on ratification, the defendant would object to this instruction on the basis there's no evidence in the record on which the jury can determine that, in fact, the act had been ratified." (No reference to Instruction No. 28). | Waived pursuant to *Fed. R.Civ.P.* as not previously asserted in motion for judgment as a matter of law. Not preserved for consideration on a *Rule* 59 motion for new trial by objection to jury instruction No. 23. | *Rule* 50: Sufficient evidence for reasonable jury to find Wieczorek had managerial capacity and ratified or approved Leckband's wrongful conduct by engaging in similar conduct when he had another employee copy records and then delivered them himself to the personnel department. Wieczorek's conduct itself constituted wrongful acts by an employee with managerial capacity. *Rule* 59: Evidence is sufficient on court's review to preclude new trial. |
| 2. Lack of actual damages | Post–Trial Motions: "The jury awarded Pulla nominal damages. ... The jury made a bold statement that Pulla did not suffer any *actual* damages, but merely a technical injury." Post–Trial Supplemental Brief: "Pulla did not prove he had sustained any actual damages" whether award was for nominal or actual damages. | Waived pursuant to *Fed. R.Civ.P.* 50 because, assuming objection based on lack of evidence of anguish addresses this, the motion was not reasserted. Waived pursuant to *Fed.R.Civ.P.* 51 as objection to instructions on punitive damages on basis of "lack of evidence" was not sufficiently specific. | *Rule* 50: Sufficient evidence for reasonable jury to find actual damages, even though insufficient evidence to determine amount or amount was small. *Rule* 59: Actual damages were both shown and awarded, so predicate for award of punitive damages was present. |
| 3. Excessive and violative of due process | Post-Trial Motions. | Raised at appropriate time as review of excessiveness and constitutionality of punitive damages by trial court post-trial is required. | Award did not have to be in proportion to award of actual damages but in proportion to potential harm to plaintiff and others from Amoco's conduct, which was enormous. Award was appropriate to deter similar wrongdoing by Amoco and others, appropriate in light of Amoco's financial condition, and Amoco was culpable for the wrong-doing. |

## II. ANALYSIS

### A. Preservation Of Errors

The chart above reveals the court's conclusion that Amoco has waived almost all of its post-trial challenges to the jury's verdict and that, even on their merits, the challenges do not require judgment as a matter of law in Amoco's favor or a new trial. However, before explaining the basis for the court's conclusion on the merits of Amoco's post-trial motions for judgment as a matter of law and

new trial, the court will explain its conclusions regarding Amoco's failure to preserve for post-trial consideration most of the objections it now raises to the jury instructions given and to the jury's verdict. The court will first discuss why Amoco's failure to renew its motion for judgment as a matter of law pursuant to *Fed.R.Civ.P.* 50 at the close of all evidence constituted a waiver of issues raised in that motion. Next, the court will discuss why Amoco's objections, or failure to

object, to certain jury instructions waived error on the issues presented.

### 1. Preservation Of Error And Rule 50 Motions

At the close of Pulla's case, Amoco moved for judgment as a matter of law on all of Pulla's claims pursuant to *Fed.R.Civ.P.* 50. Concerning Pulla's claim of invasion of privacy, Amoco argued there was no testimony to establish that Pulla had suffered any anguish as the result of the review of his credit card records.[6] In response to Amoco's Rule 50 motion on the invasion of privacy claim, Pulla stated his intention to call one more witness.[7] Amoco did not raise the issues of punitive damages, malice, or ratification, in its Rule 50 motion. The court took the motion under advisement, and although expressing doubt as to the submissibility of some of the claims, specifically stated that it thought the invasion of privacy claim was submissible. Following Amoco's motion pursuant to *Fed.R.Civ.P.* 50, four witnesses testified, providing a full day of testimony. Although Pulla did not call any more witnesses, he did attempt to introduce some further evidence on the invasion of privacy claim during the testimony of Mr. Marzullo.[8] At the close of all evidence, Amoco, for no apparent reason, failed to reassert its motion pursuant to Rule 50.

Amoco argues that its failure to reassert the motion pursuant to Rule 50 is not fatal to its present assertion of a motion for judgment as a matter of law (formerly a motion for judgment notwithstanding the verdict or j.n.o.v.). Amoco argues that among the exceptions to the rule that a motion for judgment as a matter of law must be renewed at the close of all evidence are when the court took the motion under advisement and when objections were made to jury instructions on the same subject, circumstances Amoco argues were present here.

Under *Fed.R.Civ.P.* 50(b), a litigant's motion for judgment notwithstanding the verdict may not be entertained unless the movant previously moved for judgment as a matter of law (formerly "directed verdict") at the close of all evidence. *Smith v. Ferrel*, 852 F.2d 1074, 1075 (8th Cir.1988) (record disclosed that no motion for "directed verdict" had been made at the close of all evidence, "appellant therefore cannot question

---

6. Amoco's objection to submission of the invasion of privacy claim, as presented in its motion for judgment as a matter of law, was as follows:

 [BY MR. GRIBBLE:] As to the claim for invasion of privacy, Mr. Pulla has to establish that the intrusion must be highly offensive and objectionable. He has failed to do that.

 The final element is that he also must establish that the intrusion caused anguish and suffering. There's no testimony in the record to establish that the review of the credit card records caused any anguish or suffering, caused any adverse employment action at all to Mr. Pulla, not even a reprimand or a loss of pay through a suspension, no adverse employment action of any kind.

 He has not made any other claim with respect to anguish and suffering, thus, [he] cannot meet his prima facie case. And that particular issue, the invasion of privacy, likewise, should not be submitted to the jury.
 Transcript Of Proceedings, Volume IV, Defendant's Motion For Judgment Pursuant To Rule 50, May 6, 1994, pp. 6–7.

7. Pulla's response to the motion for judgment as a matter of law on the invasion of privacy claim was as follows:

 [BY MR. ROSSI:] As to invasion of privacy, Your Honor, we do have one more witness. I am still going to try to get in Plaintiff's Exhibit 76—or 77 which the Court earlier ruled was not relevant. That particular document states that credit card information will not be supplied to employers.

 In this case, Amoco is an employer, and this information was supplied to them in the capacity of an employer, and we believe that is a violation of their own policy. And that's spelled out in the document that the Court refused to allow me to put in as a—as an exhibit.

 If that document is not allowed in as an exhibit, we still believe it's a jury issue whether there was an invasion of privacy of my client's records. He testified of being shook up over the event; he testified that he was afraid that he was being watched; he testified that he canceled his card. All of these events would indicate that it's a jury issue of what the damages are.

 In addition, there is an issue of whether or not the events that Amoco did constituted a gross violation of his privacy rights. Thank you.
 Transcript of Proceedings, Volume IV, Defendant's Motion For Judgment Pursuant To Rule 50, May 6, 1994, pp. 8–9.

8. Transcript of Proceedings, Volume IV, Testimony of Mr. Salvatore Marzullo, pp. 78–90.

the sufficiency of the evidence either before the district court through a motion for judgment notwithstanding the verdict or on appeal."); *Hubbard v. White*, 755 F.2d 692, 695 (8th Cir.1985) (motion for "directed verdict" at the close of evidence was an "essential condition precedent" to a motion for judgment notwithstanding the verdict, and where no such motion was made at the close of evidence, the j.n.o.v. motion was barred); *Myers v. Norfolk Livestock Market, Inc.*, 696 F.2d 555, 558 (8th Cir.1982). *See also Redd v. City of Phenix City, Ala.*, 934 F.2d 1211, 1214 (11th Cir.1991); *Yohannon v. Keene Corp.*, 924 F.2d 1255, 1261 (3d Cir.1991).[9] The motion for judgment as a matter of law must assert each of the grounds subsequently relied upon in the motion for judgment notwithstanding the verdict. *Midamar Corp. v. National–Ben Franklin Ins. Co.*, 898 F.2d 1333, 1337 (8th Cir.1990); *Lowe v. Conlee*, 742 F.2d 1140, 1141 (8th Cir.1984). *See also Purcell v. Seguin State Bank & Trust Co.*, 999 F.2d 950, 956 (5th Cir.1993); *McCann v. Texas City Refining, Inc.*, 984 F.2d 667, 671 (5th Cir.1993).

### a. Reassertion Of A Rule 50 Motion

 Courts, including the Eighth Circuit Court of Appeals, have construed Rule 50(b) as requiring a party who has moved for judgment as a matter of law prior to the conclusion of the case to reassert that motion at the close of all of the evidence, or be held to have waived the right to seek judgment notwithstanding the verdict. *Myers*, 696 F.2d at 558. *See also Purcell*, 999 F.2d at 956 (failure to renew motion waives right to file a post-verdict motion for judgment); *McCann*, 984 F.2d at 672 (motion for judgment as a matter of law made earlier than the close of evidence, but not renewed at the close of all evidence, "cannot serve as a predicate for a motion for judgment notwithstanding the verdict."); *Riverview Inv., Inc. v. Ottawa Community Improvement Corp.*, 899 F.2d 474, 477 (6th Cir.1990) ("party seeking a judgment n.o.v. must, as a prerequisite, move for a directed verdict at the close of all

the evidence or renew such motion if made prior to the close of all the evidence."); *Gutzwiller v. Fenik*, 860 F.2d 1317, 1330 (6th Cir.1988) (party who fails to renew prior motion waives the original motion and is precluded from questioning the sufficiency of the evidence on appeal.). Where a motion for judgment as a matter of law made before the close of evidence has not been renewed, the court should not even consider the j.n.o.v. motion. *McCann*, 984 F.2d at 671. A party foreclosed from pursuing a motion for judgment notwithstanding the verdict for this reason is limited at the time of post-trial motions to a motion for new trial, *Yohannon*, 924 F.2d at 1261, and in some circuits is deemed to have waived any post-trial attack on the sufficiency of the evidence. *See, e.g., Redd*, 934 F.2d at 1214 (in such circumstances no attack on sufficiency of evidence is allowed); *Yohannon*, 924 F.2d at 1262 (citing cases in the Third Circuit that so hold); *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1137 (5th Cir.1991); *Ferrel*, 852 F.2d at 1075; *Bohrer v. Hanes Corp.*, 715 F.2d 213, 216 (5th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984). The purposes of this requirement are that it

> enable[s] the trial court to re-examine the question of evidentiary insufficiency as a matter of law if the jury returns a verdict contrary to the movant, and [it] alert[s] the opposing party to the insufficiency before the case is submitted to the jury, thereby affording it an opportunity to cure any defects in proof should the motion have merit.

*Bohrer*, 715 F.2d at 217; *see also Seidman*, 923 F.2d at 1137 (quoting *Bohrer*).

One circuit court of appeals has held that a party who made the proper motion at the close of the plaintiff's case, but failed to renew that motion at the close of all of the evidence, had not made a "purely technical"

---

9. The advisory note to the 1963 amendment to *Fed.R.Civ.P.* 50(b) "unequivocally states a 'motion for a judgment not withstanding the verdict will not lie unless it was preceded by a motion for directed verdict made at the close of the evidence.'" *Redd v. City of Phenix City, Ala.*, 934 F.2d 1211, 1214 (11th Cir.1991).

error that could be excused. *Redd,* 934 F.2d at 1214. Rather, the court held in Rule 50

> [w]e are presented with a particularly clear and mechanical rule of law; the [defendant] did not comply and the district judge may not waive [sic] his magic wand dismissing a procedural requirement as a technicality.

*Id.* Therefore the district court's j.n.o.v. was reversed. *Id.* Some time ago, the Eighth Circuit Court of Appeals recognized that other circuits had found certain circumstances excused technical non-compliance with the reassertion requirement. *Myers,* 696 F.2d at 558–59 (citing cases from various circuits that had excused non-compliance without elaboration of facts of those cases). The court stated that

> [a]ssuming we were to apply a flexible approach, however, the record in the instant case discloses no circumstances similar to those relied upon in the above-cited decisions to excuse noncompliance with Rule 50(b). Consequently, [defendant] was precluded from presenting its motion for judgment notwithstanding the verdict. . . .

*Id.* at 559. In *Myers,* the defendant's motion for directed verdict at the close of plaintiff's evidence had been denied and was not reasserted at the close of all of the evidence. *Id.* at 558–59. Because Eighth Circuit cases provide little guidance on what circumstances *are* sufficient to excuse non-compliance, the court turns to an examination of what circumstances other courts have recognized as sufficient.

Some courts have allowed post-trial j.n.o.v. motions despite failure to reassert a prior Rule 50 motion at the close of all evidence "when the purposes of the rule have been satisfied because the court has had the opportunity to reconsider sufficiency as a matter of law and because the nonmovant has had the opportunity to cure any insufficiencies." *Purcell,* 999 F.2d at 956. These courts have sometimes justified excusing technical non-compliance on the basis of the "liberal spirit imbuing the Federal Rules of Civil Procedure." *Gutzwiller,* 860 F.2d at 1331 (technical non-compliance excused if

purposes of rule have been served, and finding opposing party and court had been put on notice of sufficiency challenges by first Rule 50 motion and court's subsequent reopening of questions raised thus serving purposes of rule). The Fifth Circuit requires that the non-compliance be "de minimis," specifying the circumstances in which it has excused non-compliance to be where

> the trial court had reserved a ruling on an earlier motion for directed verdict (made at the close of the plaintiff's evidence); the defendant called no more than two witnesses before closing; only a few minutes elapsed between the motion for directed verdict and the conclusion of all the evidence; and the plaintiff introduced no rebuttal evidence.

*McCann,* 984 F.2d at 671 (citing cases); *Davis v. First Nat'l Bank of Killeen, Tex.,* 976 F.2d 944, 949 (5th Cir.1992). The Fifth Circuit has since required this combination of circumstances. *Purcell,* 999 F.2d at 956 (the court reserves ruling on the first motion, the only evidence introduced after the motion is not related to the motion, and very little time passes between the original motion and the close of evidence). Similar, but slightly different combinations of these elements have been required by other courts. *See, e.g., Gutzwiller,* 860 F.2d at 1330 (reservation of ruling, followed by court's reconsideration of issues enough without reference to temporal framework or amount of evidence offered after motion). The Sixth Circuit has a two-prong test to decide when to depart from "slavish nominalism" in adherence to the reassertion requirement of Rule 50:

> [A] motion for judgment notwithstanding may be granted despite the party's failure to renew his motion for a directed verdict where: (1) The court indicated that renewal of the motion would not be necessary to preserve the party's rights; and (2) The evidence following the party's unrenewed motion for a directed verdict was brief and inconsequential.

*Riverview Investments,* 899 F.2d at 477 (citing *Boynton v. TRW, Inc.,* 858 F.2d 1178, 1186 (6th Cir.1988), and 5A *Moore's Federal Practice Digest* § 50.08 (2d ed. 1984)).

Some courts have excused non-compliance with the reassertion requirement where the movant of the original motion subsequently objects to proposed jury instructions on grounds pertaining to the sufficiency of evidence. *Purcell*, 999 F.2d at 956 (citing *Villanueva v. McInnis*, 723 F.2d 414, 417–18 (5th Cir.1984)). However, in *Villanueva*, the defendant had been specifically directed to reassert his motion after the presentation of closing arguments and jury instructions. *Villanueva*, 723 F.2d at 418. Finally, some courts will only excuse non-compliance to avoid injustice or an evidentiary inadequacy. *See Yohannon*, 924 F.2d at 1262 (relying on fact that undisputed evidence showed verdict was totally without legal support and justice required the court's review of the sufficiency of evidence).[10]

Amoco appears to argue that each of the following circumstances standing alone is sufficient to excuse non-compliance: (1) if the court took the motion under advisement or there was some confusion on the part of the court and counsel as to whether the motion needed to be renewed, citing *Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 786 F.2d 1342 (9th Cir.1985); *Boynton v. TRW, Inc.*, 858 F.2d 1178 (6th Cir.1988); *Miller v. Rowan Cos., Inc.*, 815 F.2d 1021, 1025 (5th Cir. 1987); *K & S Partnership v. Continental Bank, NA*, 127 F.R.D. 664 (D.Neb.1989); (2) little or no evidence on the subject was intro-

duced after the motion was made, citing *Halsell v. Kimberly–Clark Corp.*, 683 F.2d 285, 294 (8th Cir.1982); *Miller*, 815 F.2d at 1025; *K & S Partnership*, 127 F.R.D. at 664; and (3) objections were made to jury instructions on the same subject, citing *Farley*, 786 F.2d at 1347; *Hinojosa v. City of Terrell*, 834 F.2d 1223, 1228 (5th Cir.1988). Yet, the court finds that the Fifth Circuit cases Amoco cites do not stand for the proposition that any one of these circumstances standing alone will excuse non-compliance; rather, the Fifth Circuit specifically requires a set of circumstances described above. *Purcell*, 999 F.2d at 956; *McCann*, 984 F.2d at 671 (citing cases); *Davis v. First Nat'l Bank of Killeen, Tex.*, 976 F.2d 944, 949 (5th Cir.1992). Similarly, in *Farley*, two circumstances in combination were considered sufficient: The court reserved ruling on the prior motion and objections were made to jury instructions. *Farley*, 786 F.2d at 1347. In *Halsell*, the court noted that excusing non-compliance requires both an indication by the court that renewal of the motion was not required and the evidence introduced after the motion was brief. *Halsell*, 683 F.2d at 294. The court found that in the case before it, the court had stated that it considered the motion renewed and the evidence introduced after the motion was slight and did not pertain to the issues

10. The court in *Yohannon* noted the following exceptions created by other circuits:

(1) the "manifest injustice" exception, *see Irvin Jacobs & Co. v. Fidelity & Deposit Co.*, 202 F.2d 794, 799 (7th Cir.1953) (noting that "[u]nder well established principles, the sufficiency of the evidence to support the verdict is not preserved for review unless this is one of those exceptional cases which render inapplicable the general rule.") (citations omitted); *United States v. Harrell*, 133 F.2d 504, 507 (8th Cir. 1943) (recognizing that "a federal appellate court, in order to prevent a manifest miscarriage of justice, may notice an apparent error not properly raised on the record"); (2) the "no evidence" exception, *see Hinojosa v. City of Terrell*, 834 F.2d 1223, 1228 (5th Cir.1988) (quoting *Stewart v. Thigpen*, 730 F.2d 1002, 1007 (5th Cir.1984)) (holding that "our inquiry is restricted to 'whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result

in manifest miscarriage of justice' ") (emphasis in original), *cert. denied*, [493] U.S. [822], 110 S.Ct. 80, 107 L.Ed.2d 46 (1989); *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 297 (5th Cir.1978); rule also applies in the Eleventh Circuit, following the principle established in *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (in banc) (the Eleventh Circuit adopts Fifth Circuit precedent existing at time of Eleventh Circuit's creation); (3) the "reinterpretation" exception, *see, e.g., Sears v. Pauly*, 261 F.2d 304 (1st Cir.1958) (reinterpreting the sufficiency arguments as an objection to the jury instructions); *Warner v. Kewanee Mach. & Conveyor Co.*, 411 F.2d 1060 (6th Cir.1969) (preserving review of a sufficiency question by reinterpreting the sufficiency issue as an evidentiary problem, which the court found subject to plenary review), *cert. denied*, 398 U.S. 906, 90 S.Ct. 1685, 26 L.Ed.2d 65 (1970).

*Yohannon*, 924 F.2d at 1262 n. 7.

raised in the motion for directed verdict. *Id.* *See also K & S Partnership,* 127 F.R.D. at 666 (noncompliance excused because of combination of factors, including no prejudice from failure to reassert motion, court tacitly condoned procedure allowing defendant to move for directed verdict before formally resting, defendant presented no new evidence before resting, and evidence presented was brief and consisted of summary of certain complex evidence already in the record). In *Hinojosa,* although the court seemed to accept that objections to jury instructions alone might excuse failure to reassert a motion for directed verdict, the court was actually confronted with a situation where there had been no prior motion for directed verdict, and the court concluded that the defendant's motion for j.n.o.v. lacked the proper predicate. *Hinojosa,* 834 F.2d at 1228. The court concludes that any of the factors Amoco has listed standing alone is inadequate to excuse non-compliance with Rule 50.

### b. Lack Of Reassertion Of Amoco's Rule 50 Motion

■ In the present circumstances, the court did take under advisement Amoco's motion for judgment as a matter of law at the conclusion of Pulla's case. That action was not an indication by the court that renewal of the motion was not required; rather, in the context of the court's further discussion of the submissibility of the invasion of privacy claim, taking the motion under advisement should have prompted Amoco to reassert its motion at the proper time. Also, Pulla indicated an intention to attempt to introduce further evidence in support of that claim. Pulla made such an effort. These circumstances should also have alerted Amoco to the necessity of reasserting its motion at the proper time. Also, a substantial part of the trial, four witnesses lasting a full day involving introduction of several exhibits by both parties, followed Amoco's motion. In the circumstances of this case, Amoco's failure to reassert its motion was not a "de minimis" departure from standard procedures, but a major oversight. This court is not inclined to wave its magic wand and

ignore the specific requirements of the rule and relevant decisions.

Furthermore, the court does not find that injustice will result from the court's adherence to the dictates of Rule 50, precluding Amoco from asserting a post-trial motion for judgment as a matter of law on the ground that Amoco failed to reassert its motion for judgment as a matter of law at the close of all evidence. Amoco's application for post-trial relief should be limited to a motion for new trial. *Yohannon,* 924 F.2d at 1261. The court's conclusion disposes of issues Amoco raised in its unrenewed motion for judgment as a matter of law and those it failed to raise in that motion. Of the issues raised in its unrenewed motion for judgment as a matter of law, the only one of interest here is Amoco's assertion that there was no evidence of anguish or suffering to support submission of Pulla's claim of invasion of privacy to the jury. The motion was not timely reasserted, and Amoco thereby waived its right to assert the issue in the present post-trial motion for judgment as a matter of law. *Myers,* 696 F.2d at 558. Amoco did not raise at all in its first motion for judgment as a matter of law any of the following challenges to the jury's verdict finding an invasion of privacy: Amoco's assertion that it had a legitimate interest in the information it obtained from Pulla's private records; that its means in obtaining that information were not objectionable to a reasonable person; that Amoco did not ratify any wrongful conduct by an employee; and that the jury found an invasion of privacy upon the wrong standard for injury. A motion for judgment as a matter of law is therefore waived as to these issues, and Amoco's only means of post-trial relief on these issues is through assertion of a motion for new trial. Similarly, Amoco did not assert in its first motion for judgment as a matter of law the following challenges to the jury's award of punitive damages: Sufficiency of the evidence on any issue pertaining to punitive damages including whether there had been a showing of actual damages; or sufficient evidence of malice or ratification. Amoco's means of obtaining post-trial relief on these issues are therefore also limited to a motion for new trial. The following chart summarizes these conclusions.

| Issues Waived By Non–Compliance With *Fed.F.Civ.P.* 50 | | |
|---|---|---|
| Amoco's Challenge | When Raised | Rule 50 Waiver |
| **Invasion Of Privacy:** | | |
| 1. Sufficiency of Evidence: | | |
| a. Anguish or suffering | May 6 Motion For Judgment As A Matter Of Law at conclusion of Pulla's case. | Not reasserted at close of all evidence. |
| b. Amoco's legitimate interest | Post–Trial Motions. | Never previously asserted. |
| c. Amoco's means were not objectionable | Post–Trial Motions. | Never previously asserted. |
| d. Ratification | May 9 Jury Instruction Conference | Never previously asserted. |
| 2. Incorrect standard for injury | Post–Trial Motions | Never previously asserted. |
| **Punitive Damages:** | | |
| 1, Sufficiency of Evidence: | May 6 Jury Instruction Conference | Never previously asserted. |
| a. Of Malice | Post–Trial Motions | Never previously asserted. |
| b. Ratification | May 9 Jury Instruction Conference | Never previously asserted. |
| 2. Lack of Actual Damages | Post–Trial Motions | Never previously asserted. |

The court will next consider whether Amoco's objections to jury instructions on punitive damages preserved its challenges to the punitive damages award for review on a motion for judgment as a matter of law as well as on a motion for new trial. The court will also consider the effect of Amoco's objections or failure to object to jury instructions on preservation of any of its other claims of error even for consideration on a motion for new trial.

### 2. Objections To Jury Instructions

Amoco has asserted that its objections to jury instructions may substitute for strict compliance with the reassertion requirement of Rule 50, citing *Farley*, 786 F.2d at 1347; *Hinojosa*, 834 F.2d at 1228. However, the court finds that there is no issue raised in Amoco's first motion for judgment as a matter of law that could be construed to have been reasserted in Amoco's objections to jury instructions. The only issue Amoco continues to challenge here that it raised in its first motion for judgment as a matter of law was the issue of the sufficiency of evidence of anguish and suffering. That issue was not resurrected at any time during objections to jury instructions. Amoco's objections to jury instructions therefore cannot serve to preserve any issue for consideration on a post-trial motion for judgment as a matter of law even were such an objection sufficient alone to preserve error for such consideration.

Furthermore, Amoco's objections, or failure to object, to jury instructions have not preserved any error in those instructions for consideration even on a motion for new trial. First, a fair reading of Amoco's arguments concerning the invasion of privacy claim is that the court did not properly instruct the jury on the proper degree of anguish or mental distress necessary to sustain a verdict in Pulla's favor. Although these arguments will be discussed further herein, in its post-trial briefing of these motions, Amoco has argued for the first time in this litigation that a "high degree" of mental pain or distress or "severe emotional distress" is required to support a claim of invasion of privacy.[11] Amoco made no objection to the court's statement of the elements of the invasion of privacy claim in the final discussion of jury instructions, although in its motion for judgment as a matter of law Amoco did object to the court submitting to the jury an invasion of privacy claim on the ground that there was no evidence of "any anguish or suffering" on Pulla's part as the result of the alleged inva-

**11.** Defendant's Brief In Support Of Joint Motions, p. 11; Defendant's Supplemental Brief In Support Of Joint Motions, p. 10.

sion of privacy.[12] Second, Amoco seeks judgment as a matter of law or new trial on the ground that it was error for the court to submit a jury instruction on punitive damages because there was insufficient evidence of malice and insufficient evidence of ratification of wrongful acts by any Amoco employee with managerial capacity. However, the record conclusively demonstrates that Amoco objected to the punitive damages instruction *only* on the more general ground of "lack of evidence." [13] Amoco argues that this objection was sufficient to preserve the issue as to evidence of malice, because the essence of allowance of punitive damages in Iowa is that there must be malice or willful and wanton conduct.

### a. Necessity, Purpose, And Effect Of Objections And Failure To Object

 *Fed.R.Civ.P.* 51 states, in pertinent part, that

[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Opportunity shall be given to make objection out of the hearing of the jury.

The Eighth Circuit Court of Appeals has held that *Fed.R.Civ.P.* 51 imposes an affirmative duty on litigants to assert objections to jury instructions before the jury has retired or not at all. *Krementz v. Raby,* 959 F.2d 695, 697 (8th Cir.1992) (party could not rely on court's statement that it would "hold

up on the ruling" on a particular issue because there was some question about it as preserving error on pertinent instruction when no objection to instruction on the issue was made before jury retired); *Tinnon v. Burlington Northern R.R. Co.,* 898 F.2d 1340, 1341 (8th Cir.1990) (counsel cannot rely on the court or any other party to discharge duty to object); *Ways v. City of Lincoln, Nebraska,* 871 F.2d 750, 757 (8th Cir.1989); *Phillips v. Parke, Davis & Co.,* 869 F.2d 407, 409 (8th Cir.1989) ("Rule 51 makes it incumbent upon the attorneys in a civil case to ascertain how the jury is to be instructed and to state any objections before the jury retires. Counsel is entitled to rely on no one in discharging this duty."). The purpose of Rule 51 is

to compel litigants to afford the trial court an opportunity to correct any error in the instructions and also to prevent the losing party from obtaining a new trial through relying on a possible error in the original trial.

*Johnson v. Houser,* 704 F.2d 1049, 1051 (8th Cir.1983) (*per curiam*). *See also Arthur Young & Co. v. Reves,* 937 F.2d 1310, 1333–34 (8th Cir.1991) (citing *Johnson*); *Tinnon,* 898 F.2d at 1341; *Ways,* 871 F.2d at 757 n. 5 (quoting *Johnson* and holding that litigants failed to object at the required time); *Phillips,* 869 F.2d at 409 (purpose of rule is to give trial court the opportunity to cure a defect in the instructions prior to submission of case to jury). The Rule helps to avoid the necessity of a retrial when a losing party, "by design or through sheer neglect," fails to

---

12. Amoco's first motion for judgment as a matter of law as to the invasion of privacy claim was quoted above in footnote 6.

13. The extent of Amoco's objections to the punitive damages instructions is as follows:

> MR. GRIBBLE: Finally, Your Honor, then, on Instructions Number 26 [Punitive Damages] and 28 [Punitive Damages—The Defendant], defendant would object to those instructions on the ground that there's not sufficient evidence in the records to justify submitting those instructions to the jury.

Transcript Of Proceedings, Volume IV, Jury Instruction Conference, May 6, 1994, p. 174. Amoco did make a somewhat more specific objection to the ratification instruction, No. 23, in the

second of the two jury instruction conferences on the record on May 9, 1994. That objection was as follows:

> [BY MR. GRIBBLE:] In addition to the comments on Friday, the defendant would offer the following: As to Instruction Number 23 on ratification, the defendant would object to this instruction on the basis there's no evidence in the record on which the jury could determine that, in fact, the act had been ratified.

Transcript of Proceedings, Volume V, Jury Instruction Conference, May 9, 1994, p. 4. Amoco did not, at the time of this second opportunity to make a record of objections to jury instructions, object to or clarify its objection to the punitive damage instruction referring to ratification, No. 28.

make an objection at the proper time. *Arthur Young & Co.*, 937 F.2d at 1334 (quoting 9 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 2551 (1971)). Failure to make a proper objection to a jury instruction constitutes a waiver of error. *Campbell*, 19 F.3d at 1277; *Arthur Young & Co.*, 937 F.2d at 1334; *Hicks v. Six Flags Over Mid-America*, 821 F.2d 1311, 1315 (8th Cir.1987); *Thomas v. Booker*, 784 F.2d 299, 304 (8th Cir.1986), *Johnson*, 704 F.2d at 1051.

### b. Timing, Procedure, And Specificity Required For Objections

 Cases from this circuit demonstrate that the timing requirements and procedures for objecting to jury instructions must be followed. Specific objections must be made on the record; tender of an alternative instruction without objecting to the court's charge will not preserve the error. *Campbell v. Vinjamuri*, 19 F.3d 1274, 1277 (8th Cir.1994); *Tillwick v. Sears, Roebuck & Co.*, 963 F.2d 1097, 1099 (8th Cir.1992) (specific objection must be on the record); *Farmland Indus. v. Frazier-Parrott Commodities, Inc.*, 871 F.2d 1402, 1408 (8th Cir.1989) (tender of alternative instruction not enough), *Johnson*, 704 F.2d at 1051 (tender of alternative instruction not enough), *but see Beckman v. Mayo Foundation*, 804 F.2d 435, 438 (8th Cir.1986) (noting that "[a] general objection to the failure to give proposed instructions may suffice to preserve the alleged error," citing *Monahan v. Flannery*, 755 F.2d 678, 683 (8th Cir.1985), but holding that because no objection had been made the issue was waived). Extensive pretrial briefing of an issue will not preserve alleged errors in instruction on that issue if no objection is made to the relevant instruction before the jury retires. *Beckman*, 804 F.2d at 438; *DeHues v. Western Electric Co.*, 710 F.2d 1344, 1346 (8th Cir.1983). Objections to instructing on an issue made during the course of trial will not preserve an error in the instructions when no further objection is made to the instructions prior to the jury retiring. *Krementz*, 959 F.2d at 697 (judge himself raised objection to particular instruction at close of plaintiff's case, but party did not reurge the objection prior to instruction of jury). Nor does a party's alternative post-

trial motion for judgment as a matter of law or for new trial preserve the issue for appellate review, because Rule 51 "is not so easily circumvented." *Norton v. Caremark, Inc.*, 20 F.3d 330, 335 (8th Cir.1994) (citing and quoting *Mid-America Food Service, Inc. v. ARA Services, Inc.*, 578 F.2d 691, 695 (8th Cir.1978)).

 Objections to jury instructions must also be "sufficiently specific to bring into focus the precise nature of the alleged error." *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943); *Hicks*, 821 F.2d at 1315; *Denniston v. Burlington Northern, Inc.*, 726 F.2d 391, 393 (8th Cir. 1984); *Wilson v. Crouse-Hinds Co.*, 556 F.2d 870, 875 (8th Cir.), *cert. denied*, 434 U.S. 968, 98 S.Ct. 513, 54 L.Ed.2d 455 (1977). Rule 51 itself requires that an objection to a jury instruction state "distinctly the matter objected to and the grounds of the objection." *Christopherson v. Deere & Co.*, 941 F.2d 692, 694 (8th Cir.1991) (finding objection made insufficient).

Consequently, the Eighth Circuit Court of Appeals has also required a close relationship between the objection made before the jury was instructed and subsequent complaints of error. In *Hrzenak v. White-Westinghouse Appliance Co.*, 682 F.2d 714, 719 (8th Cir. 1982), the plaintiff objected to an instruction on appeal on the ground that the instruction misled the jury into believing that he had the burden of establishing why he was discharged, which is contrary to Missouri law, but at trial he had only objected on the ground that the instruction "constitutes a third burden of proof placed upon the plaintiff as the other burden of proofs being set forth in plaintiff's 3 and defendant's No. 3 and defendant's No. 4." *Hrzenak*, 682 F.2d at 719. The court concluded that this objection was not specific enough to preserve the alleged error for appellate review under Rule 51. *Id.* In *Denniston*, on appeal the plaintiff contended that one of the instructions was erroneous because it was "cautionary and argumentative" and prevented the jury from considering defects as evidence of negligence. *Denniston*, 726 F.2d at 393. However, at trial, Denniston had made only a "general objection" to the instruction that "did

not particularize either of these grounds." *Id.* The court therefore concluded that Denniston had not preserved the alleged error for review. *Id.* Similarly, in *Johnson,* the plaintiff "failed specifically to object to the instruction that was given," but stated only that he "would prefer" a different wording. *Johnson,* 704 F.2d at 1051. The court concluded that describing some other instruction as "preferred" without a specific objection to the instruction given waived the objection. *Id.* In *Tinnon,* one party objected to an instruction on the ground that it was not applicable to the facts and that it was misleading, not on the ground that a portion of the Arkansas statute had been omitted from the instruction, which was its objection on appeal. *Tinnon,* 898 F.2d at 1343. The court held that the complaining party "did not distinctly state the nature of [its] complaint as required by Rule 51" and therefore held it could review the instruction only under the "plain error" standard. *Id.* In *Christopherson,* the plaintiff objected to an instruction on the ground that "the evidence was insufficient to justify an assumption of risk instruction, not that the instruction itself contained an incorrect statement of the law." *Christopherson,* 941 F.2d at 694. The court again held that the objection did not state distinctly the matter objected to or the grounds of the objection as required by the rule. *Id. See also Thomas v. Booker,* 784 F.2d 299, 304 (8th Cir.1986) (objection that counsel did not believe that "there's any evidence in the case to support the giving of that instruction" was insufficient to preserve error alleging instruction applied an improper legal standard).

### c. Amoco's Objections Or Lack Thereof

### i. The Elements Of Invasion Of Privacy

Amoco now objects to jury instructions on two of the elements necessary for liability on Pulla's invasion of privacy claim, ratification and the standard for injury. However, only the ratification objection was actually made at the time of the final conferences on jury instructions. The objection to the standard for injury presented in the jury instructions was made for the first time in Amoco's post-trial motions.

In its briefs in support of its post-trial motions, Amoco argues strenuously that a claim of invasion of privacy requires a "high degree" of mental pain or "severe emotion stress." Yet, Amoco did not object to the jury instruction on invasion of privacy on any ground except to argue that there was no evidence upon which a jury could find ratification. Amoco certainly did not object to the invasion of privacy instruction on the ground that it misstated the standard for injury a jury was required to find in order for Pulla to prevail on his claim. The court concludes below that it properly instructed the jury on the elements of the claim under Iowa law. Furthermore, Amoco's objections to submitting Pulla's invasion of privacy claim offered during the course of trial cannot substitute for a timely objection to the relevant instruction. *Krementz,* 959 F.2d at 697. Nor will Amoco's alternative post-trial motions for judgment as a matter of law or for new trial preserve the issue for post-trial or appellate review, because Rule 51 "is not so easily circumvented." *Norton,* 20 F.3d at 335.

Even were the court to consider the objection offered during the unrenewed motion for judgment as a matter of law, the court concludes that the objection made then, that "[t]here's no testimony in the record to establish that the review of the credit card records caused any anguish or suffering" to Pulla, is too general to preserve an error based on alleged misstatement of the standards for the amount of injury required. *Christopherson,* 941 F.2d at 694; *Tinnon,* 898 F.2d at 1343; *Denniston,* 726 F.2d at 393; *Hrzenak,* 682 F.2d at 719. Amoco failed to preserve the alleged error in the invasion of privacy instruction, and failed to state its objection with the required specificity. Amoco is not entitled to judgment as a matter of law or a new trial on the basis of any alleged error in the invasion of privacy instruction.

Amoco's objection to the invasion of privacy instruction as it pertains to ratification was not raised in the first, unrenewed motion for judgment as a matter of law, and the court concluded above that Amoco cannot

assert this issue as a ground for a motion for judgment as a matter of law. However, Amoco's objection to the invasion of privacy instruction as it pertains to ratification does not suffer the same difficulties under *Fed. R.Civ.P.* 51 as do Amoco's objections to the standard for injury. Amoco's objection concerning ratification was stated distinctly and specifically at the time of objections to jury instructions. Amoco therefore preserved this error, and only this error, for consideration on a motion for new trial.

### ii. The Malice And Ratification Instructions On Punitive Damages

Although Amoco did timely object to the punitive damages instructions on the ground of "lack of evidence," in its post-trial motions Amoco has greatly amplified its objection. Post-trial Amoco now asserts that it is specifically lack of evidence of *malice* and lack of evidence of *ratification* that should have prevented the court from instructing the jury on punitive damages. Amoco asserts that its general objection was sufficient to preserve error because malice is the essence of an award of punitive damages under Iowa law.[14] The court is not persuaded that Amoco's objection was "sufficiently specific to bring into focus the precise nature of the alleged error," *Palmer*, 318 U.S. at 119, 63 S.Ct., at 483; *Hicks*, 821 F.2d at 1315; *Denniston*, 726 F.2d at 393; *Wilson*, 556 F.2d at 875, or that it stated "distinctly the matter objected to and the grounds of the objection" as required by Rule 51. *Christopherson v. Deere & Co.*, 941 F.2d 692, 694 (8th Cir.1991) (finding objection made insufficient).

Malice (or wanton and willful conduct, as the level of culpability is defined by Iowa Code § 668A.1), is not the only question which a jury must resolve on the basis of the evidence presented in order to award punitive damages. *See, e.g.,* Iowa Model Civil Jury Instruction 210.1. As is discussed more fully below, a principal evidentiary issue is whether the plaintiff has shown actual damages. *See, e.g., Pringle Tax Service, Inc. v. Knoblauch,* 282 N.W.2d 151, 153–54 (Iowa 1979). Another is the amount of punitive damages which will punish and discourage like conduct by the defendant and others. *TXO Production Corp. v. Alliance Resources Corp.,* —— U.S. ——, ——–——, 113 S.Ct. 2711, 2721–22, 125 L.Ed.2d 366 (1993); *Spaur v. Owens–Corning Fiberglas Corp.,* 510 N.W.2d 854, 865 (Iowa 1994); *Beeman v. Manville Corp. Asbestos Disease Compensation Fund,* 496 N.W.2d 247, 255 (Iowa 1993); *Ryan v. Arneson,* 422 N.W.2d 491, 496 (Iowa 1988); *Pringle,* 282 N.W.2d at 154; *McCarthy v. J.P. Cullen & Son, Corp.,* 199 N.W.2d 362, 369 (Iowa 1972). Yet another, in the context of a case involving a corporate defendant being held liable for punitive damages for a tort by an employee or employees, is the question of Amoco's ratification of the misconduct. *See, e.g., Bethards v. Shivvers, Inc.,* 355 N.W.2d 39, 45 (Iowa 1984). Amoco's belated focus on but one or two of these factors as unsupported by the evidence could not have been drawn to the court's attention by the general "lack of evidence" objection made at the final jury instruction conference. Amoco's objections to the punitive damages instructions on the basis of lack of evidence of malice or ratification were not distinctly stated. Nor were any grounds offered for the general objection actually made. A "shotgun" objection, offering no specific grounds, should not be allowed to preserve rifle shot issues as specific as evidence on particular elements or factors for which specific guidance is given to the jury.[15] The court concludes that Amoco is not entitled to judgment as a matter of law or a new trial on the basis of any inadequacy

---

14. Amoco does not appear to address the question of whether its "lack of evidence" objection also preserved the ratification question, possibly because it believes that its objection to Instruction No. 23 on ratification also preserves the ratification issue as to Instruction No. 28. The court need not decide this issue, however, because the ratification issue was not raised in Amoco's unrenewed motion for judgment as a matter of law, and the ratification issue is also resolved by the evidence, as is discussed further below.

15. The malice element of the instruction given in this case defines it for the jury as "willful and wanton disregard for the rights of another" as required by Iowa Code § 668A.1. *See* Instruction No. 26. The ratification requirement was presented in both Instructions Nos. 23 and 28.

in the instructions on malice because Amoco failed to preserve that alleged error.

■ Although the court could read Amoco's objection to Instruction No. 23 concerning ratification in the context of liability for the invasion of privacy claim as also raising the ratification issue for the punitive damages claim, the court concludes that it is not constrained to read more into a party's objections than they actually said. Furthermore, Instruction No. 28 also lists ratification as a factor for an award of punitive damages, and no specific objection was raised to the ratification element of that instruction. To allow an objection to a liability instruction on a claim also to stand as an objection to a punitive damage instruction, however similar the elements of the two instructions might be, would relieve defense counsel of the obligation to make separate objection to punitive damage instructions. Such a procedure would fly in the face of *Rule* 51's requirements that objections to jury instructions be stated distinctly and specify the objections and grounds therefor. Although the court concluded above that the ratification issue as to liability for any invasion of privacy had been preserved for consideration on a new trial motion, the ratification issue as to liability for punitive damages has not been preserved.

The court's conclusions that Amoco has waived its right to challenge any issue but ratification as to a finding of invasion of privacy on a motion for new trial by noncompliance with *Fed.R.Civ.P.* 51 are summarized in the following chart.

| Issues Waived By Non–Compliance With *Fed.R.Civ.P.* 51 | | |
|---|---|---|
| Amoco's Challenge | When Raised | Rule 51 Waiver |
| **Invasion Of Privacy:** | | |
| 1. Sufficiency of Evidence: | | |
| a. Anguish or suffering | May 6 Motion For Judgment Act A Matter Of Law Post–Trial Motions | Never asserted in objections to jury instructions |
| b. Amoco's legitimate interest | Post–Trial Motions | Never asserted in objections to jury instructions |
| c. Amoco's means were not objectionable | Post–Trial Motions | Never asserted in objections to jury instructions |
| d. Ratification | May 9 Jury Instruction Conference as to invasion of privacy instruction | Preserved for consideration on a *Rule* 59 motion for new trial by objection to jury instruction |
| 2. Incorrect standard for injury | Post–Trial Motions | Never raised in objections to jury instructions |
| **Punitive Damages:** | | |
| 1. Sufficiency of Evidence: | May 6 Jury Instruction Conference | Waived as not sufficiently specific to preserve errors complained of in post-trial motions |
| a. Of Malice | Post–Trial Motions | General objection not sufficient to preserve specific error |
| b. Ratification | May 9 Jury Instruction Conference as to invasion of privacy instruction, but not as to punitive damage instruction | Not raised as to punitive damages instruction, therefore objection not sufficiently distinct or specific |
| 2. Lack of actual damages | Post–Trial Motions | General objection not sufficient to preserve specific error |

Although the court has concluded that no issue was preserved for consideration on a post-trial motion for judgment as a matter of law, and only the issue of ratification was preserved for consideration on a motion for

new trial pursuant to *Fed.R.Civ.P.* 59, the court will nonetheless, in the alternative, consider all issues Amoco has raised on their merits pursuant to the standards for granting either a post-trial motion for judgment as a matter of law or a post-trial motion for new trial.

### B. The Appropriate Standard For Determining Amoco's Post-Trial Motions

Pulla's complaint presents some confusion as to the appropriate standard to be applied to Amoco's post-trial motions. Jurisdiction over Count I of Pulla's complaint was founded on a federal question. Pulla pled diversity jurisdiction only in Counts II and III of his original complaint as an alternative to supplemental jurisdiction over state law claims. Count V, the invasion of privacy claim, and the only one on which the jury found for Pulla, was an amendment to the original complaint. Count V of the amended complaint incorporates only the jurisdictional allegations of Count I of the original complaint, in which jurisdiction was founded on a federal question, not diversity. The court had supplemental jurisdiction over the invasion of privacy claim, and assumes that Pulla also intended to assert diversity jurisdiction over this claim as he had for his other state law claims. While neither Pulla nor Amoco has raised the question, "[t]here is some uncertainty about whether federal courts should apply state law standards or federal law standards to motions for a judgment notwithstanding the verdict in diversity

cases." *Keenan v. Computer Assoc. Int'l, Inc.,* 13 F.3d 1266, 1268 n. 3 (8th Cir.1994).[16]

Federal Rule of Civil Procedure 50 entitled "Judgment as a Matter of Law in Actions Tried by Jury; Alternative Motion for New Trial; Conditional Rulings" states in relevant part:

(a) Judgment as a Matter of Law.

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

(b) Renewal of Motion for Judgment After Trial; Alternative Motion for New Trial. Whenever a motion for a judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Such a motion may be renewed by service and filing not later than 10 days after entry of

---

**16.** The circuits are in conflict over what standard should be applied in diversity cases. *Compare Ross v. Black & Decker, Inc.,* 977 F.2d 1178, 1181 (7th Cir.1992) ("In diversity cases, state law governs the standard of review of a denial of a motion for judgment notwithstanding the verdict."), *cert. denied,* —— U.S. ——, 113 S.Ct. 1274, 122 L.Ed.2d 669 (1993) with *Rotondo v. Keene Corp.,* 956 F.2d 436, 438 (3rd Cir.1992) (applying federal law standard). In *Keenan,* however, the court did not resolve the question of whether federal or state law controls the motion for judgment notwithstanding the verdict in a diversity case because it found that "the federal standard and the Minnesota standard are virtually identical." *Keenan,* 13 F.3d at 1269 n. 3. Similarly, it is unnecessary for the court to resolve that issue in this litigation as the federal standard for motions notwithstanding the verdict

and the Iowa standard for such motions are nearly identical. *Compare White v. Pence,* 961 F.2d 776, 779 (8th Cir.1992) (court must view "evidence in the light most favorable to the prevailing party") with *Federal Land Bank v. Woods,* 480 N.W.2d 61, 65 (Iowa 1992) (court "must view the evidence in the light most favorable to the party against whom the motion is directed") and *Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co.,* 510 N.W.2d 153, 156 (Iowa 1993) (" '[the] evidence, taken in the light most favorable to the party resisting the motion, regardless [of] whether the evidence was contradicted, and taking every legitimate inference that might be fairly or reasonably deducted therefrom, showed that the movant was entitled to a directed verdict at the close of all evidence.' ") (quoting *Suss v. Schammel,* 375 N.W.2d 252, 255 (Iowa 1985)).

judgment. A motion for a new trial under Rule 59 may be joined with a renewal of the motion for judgment as a matter of law, or a new trial may be requested in the alternative....

Fed.R.Civ.P. 50(a) & (b).[17]

Federal Rule of Civil Procedure 59 entitled "New Trials; Amendment of Judgments" states in relevant part:

> (a) GROUNDS. A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

Fed.R.Civ.P. 59(a).

■ Because there has been some confusion in the district courts in this circuit[18] and because there are substantial differences in the standards to be applied under Federal Rules of Civil Procedure 50 and 59, the court will examine the appropriate standard to be applied under each rule. As the court recently stated in *White v. Pence,* 961 F.2d 776, 779 (8th Cir.1992), "it is evident that the standards for considering a motion for j.n.o.v. differ thoroughly from those governing consideration of a motion for new trial."

■ The court in *Pence* carefully delineated the difference between the appropriate standards for these two motions. In determining a motion for j.n.o.v. (and in the current parlance of Federal Rule of Civil Procedure 50, a motion for "judgment as a matter of law")[19], the court in *Pence* observed:

> the question is a legal one, whether there is sufficient evidence to support a jury verdict. This court must analyze the evidence in the light most favorable to the prevailing party and must not engage in a weighing or evaluation of the evidence or consider questions of credibility. *See Dace v. ACF Indus., Inc.,* 722 F.2d 374, 375–76 (8th Cir.1983), *supplemented,* 728 F.2d 976 (1984). We have also stated that to sustain a motion for j.n.o.v., all the evidence must point one way and be susceptible of no reasonable inference sustaining the position of the nonmoving party. *Id.* at 375; *Washburn v. Kansas City Life Ins. Co.,*

---

**17.** While Rule 50 was amended effective December 1, 1993, the amendment was technical in nature. The Committee Notes to Rule 50 indicate:

> This technical amendment corrects an ambiguity in the text of the 1991 revision of the rule, which, as indicated in the Notes, was not intended to change the existing standards under which "directed verdicts" could be granted. This amendment makes clear that judgments as a matter of law in jury trials may be entered against both plaintiffs and defendants and with respect to issues or defenses that may not be wholly dispositive of a claim or defense.

Fed.R.Civ.P. 50 advisory committee's note.

**18.** In *United States v. Schay,* 746 F.Supp. 877, 880 (E.D.Ark.1990), *rev'd sub nom. White v. Pence,* 961 F.2d 776 (8th Cir.1992), the court stated:

> [T]his court has, over the last several years, had occasion to consider the standard to be applied in ruling on motions for a new trial several times, and must confess that this court simply does not know with any certainty what standard is to be applied by the trial courts in this circuit. The court respectfully believes that this confusion is occasioned by changing and shifting language contained in various opinions of the Court of Appeals for this circuit.

This confusion has apparently been alleviated by the court's decision in *White v. Pence,* 961 F.2d 776 (8th Cir.1992). "As to the standard to be applied in considering motions for a new trial, at least in this court's view, the 'law' in the Eighth Circuit before this court's decision in *White v. Pence,* 961 F.2d 776 (8th Cir.1992) had been cloudy, if not opaque." *Jackson v. Swift–Eckrich, Inc.,* 836 F.Supp. 1447, 1450 (W.D.Ark.1993).

**19.** "[P]rior to 1991 amendments made to the Federal Rules of Civil Procedure, a Rule 50 motion was a motion for directed verdict or motion for judgment notwithstanding the verdict. The 1991 amendments merely changed the names of these motions, but the standard for application of this rule remains the same." *Jackson,* 836 F.Supp. at 1449.

831 F.2d 1404, 1407 (8th Cir.1987); *Brown [v. Syntex Lab., Inc.,* 755 F.2d [668], 671 [ (8th Cir.1985) ]. These principles have no application to the consideration of a motion for new trial on the ground that the verdict is against the weight of the evidence.

*Pence,* 961 F.2d at 779 (footnotes omitted). *See also First Dakota Nat'l Bank v. Saint Paul Fire & Marine Ins. Co.,* 2 F.3d 801, 808–09 (8th Cir.1993). Thus, this standard requires the district court to:

> "consider the evidence in the light most favorable to the prevailing party, assume that the jury resolved all conflicts of evidence in favor of that party, assume as true all facts which the prevailing party's evidence tended to prove, give the prevailing party the benefit of all favorable inferences which may reasonably be drawn from the facts, and deny the motion, if in light of the foregoing, reasonable jurors could differ as to the conclusion that could be drawn from the evidence."

*Minneapolis Community Dev. Agency v. Lake Calhoun Assoc.,* 928 F.2d 299, 301 (8th Cir.1991) (quoting *Atlas Pile Driving Co. v. DiCon Fin. Co.,* 886 F.2d 986, 989 (8th Cir. 1989)); *McAnally v. Gildersleeve,* 16 F.3d 1493, 1500 (8th Cir.1994). This standard for consideration of a motion for judgment notwithstanding the verdict accords the jury's verdict substantial deference. *Tilson v. Forrest City Police Dep't,* 28 F.3d 802, 806 (8th Cir.1994); *McAnally,* 16 F.3d at 1500. Even with this deference to the jury's verdict, the jury cannot be accorded "the benefit of unreasonable inferences, or those 'at war with the undisputed facts,'" *McAnally,* 16 F.3d at 1500 (quoting *City of Omaha Employees Betterment Ass'n,* 883 F.2d 650, 651 (8th Cir. 1989), in turn quoting *Marcoux v. Van Wyk,*

572 F.2d 651, 653 (8th Cir.1978)), but the court must still defer to the jury's resolution of conflicting testimony. *Jackson v. Virginia,* 443 U.S. 307, 326, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979).

In contrast, concerning motions for new trial under Federal Rule of Civil Procedure 59, the court in *Pence* observed:

> With respect to motions for new trial on the question of whether the verdict is against the weight of the evidence, we have stated: "In determining whether a verdict is against the weight of the evidence, the trial court can rely on its own reading of the evidence—it can 'weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain a verdict.'" *Ryan v. McDonough Power Equip.,* 734 F.2d 385, 387 (8th Cir. 1984) (citation omitted). Similar language appears in *Brown,* 755 F.2d at 671–73; *Slatton [v. Martin K. Eby Constr. Co.],* 506 F.2d [505,] 508 n. 4 [ (8th Cir.1974), *cert. denied,* 421 U.S. 931, 95 S.Ct. 1657, 44 L.Ed.2d 88 (1975) ]; *Bates [v. Hensley],* 414 F.2d [1006,] 1011 [ (8th Cir.1969) ], and early authority cited in *Bates. See also Leichihman v. Pickwick Int'l,* 814 F.2d 1263, 1266 (8th Cir.), *cert. denied,* 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 116 (1987). These cases establish the fundamental procedures or methodology to be applied by the district court in considering new trial motions and are in contrast to those procedures governing motions for j.n.o.v.

*Id.* at 780.[20] With these principles in mind concerning the standards for post-trial motions under Federal Rule of Civil Procedure 50 and 59, the court turns to the merits of Amoco's motions.

---

**20.** In making the credibility assessments it is entitled to make in determining whether a new trial is appropriate, the court has used the following factors: (1) the interest of the witness in the result of the trial; (2) the witness' relation to any party in interest; (3) the witness' demeanor upon the witness stand; (4) the witness' manner of testifying; (5) the witness' tendency to speak truthfully or falsely, including the probability or improbability of the testimony given in light of his or her situation to see and observe; (6) the witness' apparent capacity and willingness to truthfully and accurately tell what he or she saw and observed; and (7) whether the witness' testimony is either supported or contradicted by other evidence in the case. *See United States v. Merrival,* 600 F.2d 717, 719 (8th Cir.1979); *United States v. Phillips,* 522 F.2d 388, 391 (8th Cir.1975); *Clark v. United States,* 391 F.2d 57, 60 (8th Cir.), *cert. denied,* 393 U.S. 873, 89 S.Ct. 165, 21 L.Ed.2d 143 (1968); *see also Manual of Model Jury Instructions for the District Courts of the Eighth Circuit* 3.03 (1993).

## C. Attack On The Jury's Verdict Finding An Invasion Of Privacy

Amoco makes three attacks on the jury's verdict finding in favor of Pulla on his claim of invasion of privacy. First, Amoco argues that it had a legitimate interest in obtaining Pulla's credit card information. Second, Amoco argues that using Pulla's credit card records to determine whether or not he was abusing sick leave could not be objectionable to a reasonable person. Finally, Amoco argues that there was not sufficient evidence of any injury to Pulla from the allegedly invasive conduct to support the jury's verdict. Implicit within this last attack is the argument that the court did not instruct the jury on the proper standard for a finding of injury. In its post-trial motions, Amoco has argued for the first time in this litigation that a "high degree" of mental pain or distress or "severe emotional distress" is required to support a claim of invasion of privacy. Finally, Amoco argues that it cannot be held liable for any invasion of Pulla's privacy because it did not ratify the wrongful acts of its employees. Pulla argues that it was for the jury to decide whether or not Amoco had a legitimate interest in reviewing Pulla's credit card records and the jury's finding should not be disturbed. Pulla also argues that review of credit card records is at least as objectionable as review of bank account records. Pulla asserts that the court properly instructed the jury on the degree of injury necessary and that a reasonable jury could find such injury here. Finally, Pulla asserts that there is adequate evidence that Amoco ratified the wrongful conduct in question here.

### 1. The Elements Of Invasion Of Privacy Under Iowa Law

The Iowa Supreme Court first recognized the tort of invasion of privacy in *Bremmer v. Journal–Tribune Publishing Co.*, 247 Iowa 817, 821–22, 76 N.W.2d 762, 764–65 (1956). *Stessman v. Am. Black Hawk Broadcasting Co.*, 416 N.W.2d 685, 686 (Iowa 1987); *Howard v. Des Moines Register & Tribune Co.*, 283 N.W.2d 289, 291 (Iowa 1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980); *Winegard v. Larsen*, 260 N.W.2d 816, 818 (Iowa 1977). In *Bremmer*,

the tort was defined as invasion of "the right of an individual to be let alone, to live a life of seclusion, to be free from unwarranted publicity." *Bremmer*, 247 Iowa at 821, 76 N.W.2d at 764. Since recognition of the tort in *Bremmer*, the Iowa Supreme Court has adopted and applied the principles of invasion of privacy articulated in the Restatement (Second) of Torts (1977). *Stessman*, 416 N.W.2d at 686; *Lamberto v. Bown*, 326 N.W.2d 305, 309 (Iowa 1982); *Anderson v. Low Rent Housing Comm'n of Muscatine*, 304 N.W.2d 239, 248 (Iowa), *cert. denied*, 454 U.S. 1086, 102 S.Ct. 645, 70 L.Ed.2d 621 (1981); *Howard*, 283 N.W.2d at 291; *Winegard*, 260 N.W.2d at 822 (first applying those principles).

The Restatement principles the Iowa Supreme Court has adopted are found in § 652A and subsequent sections defining each form of the tort. Section 652A states as follows:

> (1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.
>
> (2) The right of privacy is invaded by
>
> (a) unreasonable intrusion upon the seclusion of another, as stated in § 652B; or
>
> (b) appropriation of the other's name, or likeness, as stated in § 652C; or
>
> (c) unreasonable publicity given to the other's private life, as stated in § 652D; or
>
> (d) publicity that unreasonably places the other in a false light before the public, as stated in § 652E.

*Winegard*, 260 N.W.2d at 822 (also stating that these four forms of invasion of privacy were cited in *Yoder v. Smith*, 253 Iowa 505, 508, 112 N.W.2d 862, 863–64 (Iowa 1962)). The court in *Winegard* clarified the requirements of each of these forms of the tort. *Id.* The only form of the tort in question here, intrusion upon seclusion, was defined in *Winegard* as follows:

> Category (a) requires an intentional intrusion upon the solitude or seclusion of another which would be highly offensive to a reasonable person. § 652B.

*Id.*[21] The court noted further that both categories (c) and (d) of the tort require publicity or publication of some sort, and that the latter category overlaps the law of defamation. *Id.* at 823; *see also Anderson,* 304 N.W.2d at 248 (Category (d) "false light" theory of the tort, stating that although untruthfulness is required, it is not necessary for the plaintiff to prove that he or she was defamed); *Howard,* 283 N.W.2d at 298 (Category (d) publicity theory of invasion of privacy).[22] Category (a) of the tort, however, does not require publication. *Lamberto,* 326 N.W.2d at 309; *Winegard,* 260 N.W.2d at 822; Restatement (Second) of Torts § 652B, comment a.

 To recover under the intrusion upon seclusion theory of the tort,

a plaintiff must show, first, that the defendant intentionally intruded upon the seclusion that the plaintiff "has thrown about [his or her] person or affairs." Restatement § 652B comment c; *accord Winegard,* 260 N.W.2d at 822. Second, the intrusion must be one that would be "highly offensive to a reasonable person." *Winegard,* 260 N.W.2d at 822; *accord* Restatement § 652B. The defendant is not liable, however, if the plaintiff is already in public view. Restatement § 652B comment c.

*Stessman,* 416 N.W.2d at 687. The Iowa courts have made no other articulation of the elements of the intrusion on seclusion theory of the tort, and, more importantly here, have not specified the degree of injury necessary to recover on the tort.

### 2. Proof Presented

#### a. Amoco's "Legitimate Objective" And The Degree Of Intrusion

 Amoco has argued that it had a legitimate objective in reviewing Pulla's credit card records.[23] The court finds no such de-

---

**21.** Comments to the Restatement (Second) of Torts § 652B further clarify this formulation of the tort:

 *a.* The form of invasion of privacy covered by this Section does not depend upon any publicity given to the person whose interest is invaded or to his affairs. It consists solely of an intentional interference with his interest in *solitude or seclusion, either as to his person or* as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable [person].

 *b.* The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objections in entering his home. It may also be by use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping telephone wires. *It may be by some other form of investigation or examination into his private concerns, as by opening his private mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents.* The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of photograph or information outlined....

 *c.* The defendant is subject to liability under the rule stated in this Section only when he has intruded into a private place, or has otherwise invaded a private seclusion that plaintiff has thrown about his person or affairs. Thus there is no liability for the examination of a public record concerning the plaintiff, or of documents that the plaintiff is required to keep and make available for public inspection. Nor is there liability for observing him or even taking his photograph while he is walking on the public highway, since he is not then in seclusion, and his appearance is public and open to the public eye. Even in a public place, however, there may be some matters about the plaintiff, such as his underwear or lack of it, that are not exhibited to the public gaze; and there may still be invasion of privacy when there is intrusion upon these matters....

 *d.* There is likewise no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object. Thus there is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.... (emphasis added.).

**22.** Restatement (Second) of Torts § 652A, comment d, recognizes that the various forms of invasion may also overlap.

**23.** Amoco cites the following cases from other jurisdictions for the proposition that the right to privacy is not absolute and may be overcome by the defendant's legitimate interest in obtaining

fense in any formulation of the offense of invasion of privacy by intrusion on seclusion in either Iowa cases or the formulation of the tort of invasion of privacy in the Restatement (Second) of Torts § 652A and subsequent sections. Furthermore, the court does not read the cases cited by Amoco as holding that a legitimate objective is a complete defense to a claim of invasion of privacy or as holding that an employer has a legitimate interest in reviewing confidential records. Rather, the court reads these cases as standing for the more narrow proposition that the employer's interest must be balanced against the degree of intrusion resulting from the employer's methods to obtain the information in question.[24] The court concludes here, as a reasonable jury could have, that whatever Amoco's interest may have been, its methods were unduly intrusive when balanced against that interest. Amoco used confidential credit card records for a purpose for which they were never intended, and did so surreptitiously, without notice to, or consent or knowledge of, the credit card holder. Robert

Langlois, Amoco's manager of sales processing and control, testified to his belief that obtaining someone's private credit card information was wrong and illegal.[25] Amoco's means were therefore not legitimate whatever its interest might have been. For the same reasons, a reasonable jury could, and this court does find Amoco's methods to be highly offensive to a reasonable person.

### b. The Degree Of Injury [26]

■■ Amoco argues that the degree of injury required to support a claim of invasion of privacy is a "high degree" of mental pain or distress or "severe emotional distress," citing *Phar–Mor, Inc. v. Chavira*, 853 S.W.2d 710 (Tex.Ct.App.1993) (plaintiff must show defendant's invasion "caused a relatively high degree of mental pain and distress"); *K–Mart Corp. Store No. 7441 v. Trotti*, 677 S.W.2d 632 (Tex.Ct.App.1984); *Gill v. Snow*, 644 S.W.2d 222 (Tex.Ct.App.1982); *Trevino v. Southwestern Bell Telephone Co.*, 582 S.W.2d 582, 584 (Tex.Civ.App.1979).[27] Al-

information: *Bloomfield v. Retail Credit Co.*, 14 Ill.App.3d 158, 302 N.E.2d 88, 100 (1973); *Gouldman–Taber Pontiac, Inc. v. Zerbst*, 213 Ga. 682, 100 S.E.2d 881 (1957); *Earp v. City of Detroit*, 16 Mich.App. 271, 167 N.W.2d 841 (1969).

24. Amoco also cites various cases for the proposition that an employer may search its own employment files for information, or obtain credit reports about an employee, or even disseminate information about an employee's mental condition to managers. However, these cases do not hold that an employer has a legitimate interest in obtaining or reviewing these records, but show instead that courts have balanced the employer's interest against the degree of intrusion. For example, in *Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264 (9th Cir.1990), the court did not conclude that the employer had a legitimate interest in credit agency reports on an employee, even if the employer misled the credit agency about the purpose for which the report was obtained; rather, the court held that because the reports had been obtained from computerized data banks and written sources, there had been no outrageous investigative methods that were unreasonably intrusive. *Comeaux*, 915 F.2d at 1275 (also concluding that there had been a violation of consumer credit protection laws). *See also Bratt v. Int'l Business Machines Corp.*, 785 F.2d 352 (1st Cir.1986) (holding that employer's interest must be balanced against the degree of intrusion, and burden on employer would be heavy where review of records violated own internal policy to keep such information

confidential); *Robyn v. Phillips Petroleum Co.*, 774 F.Supp. 587, 592–93 (D.Colo.1991) (Colorado law requires examination of reasonableness of conduct and degree of intrusion; where there is no evidence of an invasive method to obtain information, mere possession of private information is not enough to sustain the tort claim); *Baggs v. Eagle–Picher Indus., Inc.*, 750 F.Supp. 264, 273 (W.D.Mich.1990) (drug testing not intrusive if not taken, and if taken, employees were on notice that drug testing was a condition of employment).

25. Transcript of Proceedings, Testimony of Mr. Langlois, Volume II, pp. 103–06.

26. It is important in the context of an invasion of privacy claim to distinguish between the standards for what conduct of the defendant is tortious and what injury to the plaintiff is sufficient to sustain the claim. The conduct element is defined in Restatement (Second) of Torts § 652B to be an "intrusion [that] would be highly offensive to a reasonable person," whereas the resulting injury is defined in § 652H as including the plaintiff's "mental distress."

27. Amoco has also cited the following cases for this proposition: *Brown v. Am. Broadcasting Co., Inc.*, 704 F.2d 1296 (4th Cir.1983) (citing *Time, Inc. v. Hill*, 385 U.S. 374, 384 n. 9, 87 S.Ct. 534, 541 n. 9, 17 L.Ed.2d 456 (1967)); *Davis v. First Nat'l Bank*, 124 Ariz. 458, 605 P.2d 37 (1979); *Cluff v. Farmers Ins. Exchange*, 10 Ariz.App. 560,

though these Texas decisions do require a relatively high degree of emotional distress, it is not true, as Amoco asserts, that these decisions require severe emotional distress. Rather, they require "more than mere worry, anxiety, vexation, or anger," and "more than mere disappointment, anger, resentment, or embarrassment, although it may include all these." *See, e.g., Trotti,* 677 S.W.2d at 639. However, they also state that sufficient mental distress includes "a mental sensation of pain resulting from such painful emotion as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation." *See, e.g., Id.* Furthermore, it is not true, as Amoco argues, that "all courts that have ruled on this issue have held that severe emotional distress is required to support a claim for invasion of privacy."[28] As the court has just observed, the Texas decisions do not stand for this proposition, nor do all courts require the "high degree" of anguish required by the Texas courts. *See, e.g., Monroe v. Darr,* 221 Kan. 281, 286, 559 P.2d 322, 327 (1977) ("although a plaintiff in a privacy suit can recover without proof of special damages and is not required to show general damages in specific amounts, he is required to introduce some evidence to show that he suffered anxiety, embarrassment, or some other form of mental anguish."); *Brown v. Am. Broadcasting Co., Inc.,* 704

F.2d 1296 (4th Cir.1983) ("[e]motional distress and embarrassment are key elements of two of the recognized actions for invasion of privacy," without comment on severity, whereas the Texas cases discount embarrassment).

In light of the Iowa Supreme Court's adoption of the principles of invasion of privacy articulated in the Restatement (Second) of Torts, this court believes that the applicable standard for damages is also to be found in the Restatement. Section 652H of the Restatement (Second) of Torts defines the damages available for invasion of privacy:

§ 652H. Damages

One who has established a cause of action for invasion of his privacy is entitled to recover damages for

(a) the harm to his interest in privacy resulting from the invasion;

(b) his mental distress proved to have been suffered if it is of a kind that normally results from such an invasion; and

(c) special damage of which the invasion is a legal cause.

Restatement (Second) of Torts § 652H; *see also Staruski v. Continental Telephone Co. of Vermont,* 154 Vt. 568, 574, 581 A.2d 266, 269 (Vt.1990) (damages for invasion of privacy are recoverable as stated in § 652H "even if the injury suffered is mental anguish

460 P.2d 666 (1969). However, the court concludes that they do not stand unequivocally for that proposition. For example, in *Brown,* the court had to determine whether Virginia recognized the tort of invasion of privacy, ultimately concluding that it did not. *Brown,* 704 F.2d at 1302. Furthermore, contrary to Amoco's assertion, the court stated that "[e]motional distress and embarrassment are key elements of two of the recognized actions for invasion of privacy," including intrusion, in representative jurisdictions, whereas the Texas cases discount embarrassment. *Id.* In *Davis,* the court did indeed hold that the tort of invasion of privacy requires "the safeguards [to the defendant] afforded under the tort of intentional infliction of mental distress," specifically a showing of extreme outrage. *Davis,* 124 Ariz. at 462, 605 P.2d at 41. However, the Arizona court did not consider the degree of injury necessary to sustain either the invasion of privacy or the infliction of emotional distress tort. *Id.* The Arizona court has since stated that, "No other state requires a plaintiff to prove that the defendant committed "outrage" in a false light action." *Godbehere v. Phoenix News-*

*papers, Inc.,* 162 Ariz. 335, 339, 783 P.2d 781, 785 (1989). The court therefore concluded that "the tort action for false light invasion of privacy provides protection against a narrow class of wrongful conduct that falls short of 'outrage,' but nevertheless should be deterred." *Id.* at 340, 783 P.2d at 786. Neither the court in *Davis* nor the court in *Godbehere* considered the degree of injury necessary to sustain the tort, considering instead the standard for defendant's conduct, nor did either consider the intrusion on seclusion form of the tort. *Davis,* 124 Ariz. at 462, 605 P.2d at 41 (Arizona recognizes category four, and possibly two and three of the Restatement formulations, but "has not passed upon the recognition of the tort in the first category, at least not as a tort for invasion of privacy."); *Godbehere,* 162 Ariz. at 339, 783 P.2d at 785 ("false light" form of the tort). *Cluff* also considered only a "false light" form of invasion of privacy. *Cluff,* 10 Ariz.App. at 564, 460 P.2d at 670.

**28.** Defendant's Supplemental Brief In Support Of Joint Motions For Judgment As A Matter Of Law And New Trial Or Remittur [sic], p. 10.

alone."); *McCall v. Courier–Journal & Louisville Times Co.*, 623 S.W.2d 882, 888 (Ky.1981) (applying standards for damages of § 652H to invasion of privacy claim); *Moore v. Big Picture Co.*, 828 F.2d 270, 276 (5th Cir.1987) (applying Texas law and using § 652H as standards for determining damages); *Socialist Workers Party v. Attorney Gen. of U.S.*, 642 F.Supp. 1357, 1422 (S.D.N.Y.1986) (applying New York law and finding damages standard in § 642H). Comment b to this section clarifies the recovery for mental or emotional injuries:

> The plaintiff may also recover damages for emotional distress or personal humiliation that he proves to have been actually suffered by him, if it is of a kind that normally results from such an invasion and it is normal and reasonable in its extent. . . .

Restatement (Second) of Torts § 652H, comment b. Neither § 652H nor comment b to that section require "extreme" or a heightened degree of emotional distress or humiliation. On the contrary, the language of both mitigates against such a requirement because both stress that the mental damages must be of a kind that *normally results* from an invasion, and the comment requires that the damages also be normal and reasonable in extent.

### c. The Evidence Of Injury Here

■ Pulla testified that he learned of review of his credit card records in telephone calls from other employees. Pulla testified that as a result of what he learned about the review of his records, he has had feelings of paranoia, or that his every move was being watched, and that those feelings continue. He also testified, although not without contradiction in the testimony of other witnesses, that he was singled out by being required to go to the company doctor to make sure he was sick before he could claim sick leave. He testified that verification of illness by the company doctor was not the customary practice. He also testified that he had paid off his credit card and closed his account as the result of the invasion of his privacy. Furthermore, Pulla also testified that he had learned that his credit card records had been placed in his personnel file

and felt that they unfairly characterized him in a bad light.

■ Although Pulla did not use the key words in the definition of damages for invasion of privacy found in § 652H, the court concludes that a reasonable jury could find that Pulla's testimony that he felt he was being watched amounted to mental distress of a kind that normally results from such an invasion, and that it was normal and reasonable in its extent. The court believes that a reasonable jury could also find that Pulla reacted to the invasion of privacy with indignation and feelings of humiliation and embarrassment because a number of employees were aware of the review of his credit card records and copies of those records were placed in a personnel file also available to third parties and that Pulla believed those records unfairly cast him in a bad light. A jury could also find from the evidence presented that Pulla was humiliated by being singled out and subjected to the requirement that he report to the company doctor for review of his requests for sick leave. Although Restatement (Second) of Torts § 652H does not require "public humiliation" and Iowa law specifically holds that no publication of information improperly gained is required to sustain a claim of intrusion on seclusion, *Lamberto*, 326 N.W.2d at 309; *Winegard*, 260 N.W.2d at 822, Amoco has argued on the basis of cases from other jurisdictions that there is no "public humiliation" here. A reasonable jury could find to the contrary, and the court concurs, because Pulla testified that the review of his records was known to several employees, and a copy of his records was placed in his personnel file to which third parties could also have access. Although the evidence here is far from overwhelming, the court concludes that it is sufficient to sustain the jury's verdict and sufficient that no new trial is required.

■ In discussions of jury instructions, the court indicated some doubt that Pulla had presented enough evidence to sustain a claim for damages for any future pain and suffering. Although the court believes that it is a close question, the court will not set aside the award of $1 for future pain and

suffering on the basis of the evidence that Pulla continues to suffer from feelings of paranoia and is subjected to special review of his sick leave requests.

#### d. Ratification Requirement And Evidence Presented

 Amoco makes one final attack on the sufficiency of the evidence necessary to support the jury's verdict finding Amoco liable for invasion of privacy. Amoco argues that the record does not show wrongful conduct by managerial personnel or ratification by managerial personnel of the wrongful conduct of an employee within the scope of that employee's employment such that Amoco can be held liable for punitive damages. Pulla argues that taking the evidence in the light most favorable to him, there is evidence that Amoco ratified Ms. Leckband's conduct or that Mr. Wieczorek's authority and conduct were sufficient to bind Amoco for punitive damages to lie.

The issues presented by Amoco's arguments that it may not be held liable for punitive damages for the wrongful conduct here have been considered in only a very few decisions of the Iowa Supreme Court. In *Bethards v. Shivvers, Inc.*, 355 N.W.2d 39 (Iowa 1984), the court held that

a corporation is liable for the tortious conduct of its employees, *Burr v. Apex Concrete Co.*, 242 N.W.2d 272, 277 (Iowa 1976), and this includes liability for punitive damages under circumstances of complicity set out in section 909 of the Restatement (Second) of Torts (1979). *See Briner v. Hyslop*, 337 N.W.2d 858 (Iowa 1983). Three of those circumstances are: authorization by the principal of the act; an agent in a managerial capacity; or ratification or approval of the act.

*Bethards*, 355 N.W.2d at 45. The Iowa cases concerning ratification have focused primarily on corporate liability for punitive damages. However, the court believes that the same standards articulated by Iowa courts for finding ratification for punitive damages purposes are also applicable to a finding of ratification for liability on the underlying claim.

In *Briner v. Hyslop*, 337 N.W.2d 858 (Iowa 1983), the court clarified its position on the appropriate rule for determining corporate liability for punitive damages for the acts of its employee. Although recognizing that its prior decisions in *Northrup v. Miles Homes, Inc.*, 204 N.W.2d 850 (Iowa 1973), and *Claude v. Weaver Construction Co.*, 261 Iowa 1225, 158 N.W.2d 139 (1968), had discussed a "scope of employment" rule, which required only that the employee's conduct be within the scope of his or her employment for the corporation to be held liable for punitive damages, the court determined that it was now directly confronted for the first time with the question of a corporation's liability for punitive damages for the wrongful acts of an employee. *Briner*, 337 N.W.2d at 862–63. The court considered extensively the split among jurisdictions over the appropriate rule, *Id.* at 864–66, but ultimately concluded that the appropriate rule was stated in Restatement (Second) of Torts § 909. *Id.* at 867. That rule is

[p]unitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if:

(a) the principal authorized the doing and the manner of the act, or

(b) the agent was unfit and the principal was reckless in employing him, or

(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

(d) the principal or the managerial agent of the principal ratified or approved the act.

Restatement (Second) of Torts § 909 (1979). However, in *Briner*, the court concluded that there was no evidence that the bad actor was himself in a managerial capacity. *Briner*, 337 N.W.2d at 867 (bad actor was a truck driver for defendant corporation who had been involved in a fatal accident from which the lawsuit arose). The court concluded that there was evidence that the corporate defendant had authorized the bad actor's intoxication which had allegedly caused the fatal accident for which the plaintiff sought punitive damages because it knew or should have known of the bad actor's habits. *Id.* at 867–68. The court concluded that a jury question

was engendered on whether the corporation should be subjected to punitive damages. *Id.*

These decisions do not shed light on the nature of the "managerial capacity" requirement for corporate liability based on the acts of a managerial employee or ratification by such an employee of the acts of another employee, nor does the Restatement itself. However, the Restatement does provide several citations to cases that have addressed this question.[29] Having reviewed these cases, the court agrees with Amoco that a jury could not reasonably find that Ms. Leckband had sufficient managerial capacity to bind Amoco for punitive damages. However, a reasonable jury could conclude, on the basis of the record here, that the following were true: 1) that Mr. Wieczorek was an employee with "managerial capacity" on the basis of his position with Amoco as supervisor of sales authorization and investigation over two "lead" representatives and a number of other representatives; 2) that Mr. Wieczorek, in his managerial capacity, ratified or approved Ms. Leckband's conduct, notwithstanding his reprimand to her, by immediately engaging in similar conduct of having Pulla's records copied and placed in Pulla's employment file; and 3) that Mr. Wieczorek, in his managerial capacity, himself engaged in wrongdoing that injured Pulla and that such conduct was within the scope of his employment as a supervisor of employees within the sales authorization and investigation division. If the jury were to find both conditions 1) and 2), or conditions 1) and 3), then both liability for invasion of privacy and for punitive damages would lie against Amoco. A reasonable jury could so find, and upon its own review of the evidence this court agrees. Amoco is not entitled to either judgment as a matter of law or a new trial on the jury's finding of liability for invasion of privacy or on the award of punitive damages in this case on the basis that an employee of Amoco with managerial capacity did not engage in, ratify, or approve the wrongful conduct found here.

The court's conclusions regarding disposition of Amoco's challenges to the jury's verdict finding an invasion of privacy are summarized in the following chart.

| Disposition Of Challenges To Invasion Of Privacy Verdict | | |
| --- | --- | --- |
| Amoco's Challenge | When Raised | Disposition On the Merits |
| 1. Sufficiency of Evidence: | | |
| a. Anguish or suffering | May 6 Motion For Judgment As A Matter Of Law, Post–Trial Motions | *Rule* 50: Sufficient evidence of injury for reasonable jury to find for Pulla from Pulla's feelings of being watched, and humiliation or embarrassment from awareness that several employees knew his records had been reviewed, records were placed in this personnel file and unfairly cast |

**29.** Those cases citing § 909 of the Restatement (Second) of Torts and clarifying the meaning of the "managerial capacity" requirement are as follows: *Ramos v. Frito–Lay, Inc.,* 784 S.W.2d 667, 667 (Tex.1990) (punitive damages will lie for wrongful act of management-level employee even if employee was performing non-managerial act; employee was management level because he had title of district sales manager and supervisory authority over 12 other sales representatives); *O'Donnell v. K–Mart Corp.,* 100 A.D.2d 488, 474 N.Y.S.2d 344, 347 (1984) (holding that there was more than adequate basis for the jury to conclude that the employee in charge of the store where the incident occurred had sufficient managerial authority upon which to impose liability against the employer for punitive damages for their actions); *Egan v. Mut. of Omaha Ins. Co.,* 63 Cal.App.3d 659, 133 Cal.Rptr. 899, 912 (1976) (insurance adjuster was "managerial" if jury could reasonably conclude that he had the authority to exercise his discretion in terminating benefits); *compare Neal v. C.F.M. Enterprises, Inc.,* 133 A.D.2d 941, 520 N.Y.S.2d 656, 658 (1987) (punitive damages could not be awarded because store manager not working on the night in question did not delegate managerial duties to employees such that corporation could be liable for employees' acts); *Group Hosp. Serv., Inc. v. Daniel,* 704 S.W.2d 870, 877 (Tex.Ct.App.1985) (insurance agent did not have managerial capacity to bind corporation for punitive damages because agent was not in a managerial position); *Hale v. Farmers Ins. Exchange,* 42 Cal.App.3d 681, 117 Cal.Rptr. 146, 153 (1974) (claim supervisor was not a managerial officer, so could not bind corporation for punitive damages).

| Disposition Of Challenges To Invasion Of Privacy Verdict | | |
|---|---|---|
| Amoco's Challenge | When Raised | Disposition On the Merits |
| | | him in bad light, requirement that he alone report to company doctor for review of sick leave requests. Injuries were of kind that normally result from invasion and are normal and reasonable in extent. *Rule* 59: Evidence is sufficient on court's review to preclude new trial. |
| b. Amoco's legitimate interest | Post–Trial Motions | *Rule* 50: Sufficient evidence for jury to find that Amoco's intrusive method of using confidential records for purpose for which they were never intended surreptitiously, without notice to, or consent or knowledge of, cardholder outweighs any legitimate interest; Amoco managerial employee testified to his belief that conduct was either wrong or illegal. *Rule* 59: Evidence is sufficient on court's review to preclude new trial. |
| c. Amoco's means were not objectionable to a reasonable person | Post–Trial Motions | *Rule* 50: Sufficient evidence for jury to find that Amoco's intrusive method of using confidential records for purpose for which they were never intended, surreptitiously, without notice to, or consent or knowledge of, cardholder would be offensive to reasonable person; Amoco managerial employee testified to his belief that conduct was either wrong or illegal. *Rule* 59: Evidence is sufficient on court's review to preclude new trial. |
| d. Ratification | May 9 Jury Instruction Conference | *Rule* 50: Sufficient evidence for reasonable jury to find Wieczorek had managerial capacity and ratified or approved Leckband's wrongful conduct by engaging in similar conduct when he had another employee copy records and delivered them himself to the personnel department. Wieczorek's conduct itself constituted wrongful acts by an employee with managerial capacity. *Rule* 59: Evidence is sufficient on court's review to preclude new trial. |
| 2. Incorrect standard for injury | Post–Trial Motions | *Rule* 50: Reasonable jury could find injuries identified in 1.a. were of the kind that normally results from invasion and are normal and reasonable in their extent. *Rule* 59: Cases cited by Amoco do not sustain proposition that the law in every jurisdiction requires "high degree" of anguish or "severe emotional distress." Proper standard is found in Restatement (Second) of Torts § 652H which does not require extreme injury, but injury that normally results from invasion and is normal and reasonable in its extent. |

Because the court finds that the jury's verdict in favor of Pulla on his claim of invasion of privacy is sustained by the evidence and that no new trial is required on Pulla's substantive claim, the court turns to consideration of Amoco's objections to the award of punitive damages in this case.

## D. Punitive Damages

■ Amoco makes four challenges to the award of punitive damages in this case. First, Amoco argues that Pulla is not entitled to an award of punitive damages under Iowa law because there is no award or showing of actual damages upon which to base an award of punitive damages. Second, Amoco argues that there was insufficient evidence of malice to support an award of punitive damages in this case. Third, Amoco argues that, as a corporation, it cannot be held liable for punitive damages because it did not ratify any of the allegedly wrongful conduct of Ms. Leckband. Fourth, Amoco argues that the punitive damage award is excessive and violates Amoco's due process rights.[30]

### 1. The Purpose Of Punitive Damages Under Iowa Law

■ Actual damages are designed to compensate the injured party for the injury caused by wrongful acts, but punitive damages are not compensatory. *Beeman v. Manville Corp. Asbestos Fund*, 496 N.W.2d 247, 255 (Iowa 1993); *Ryan v. Arneson*, 422 N.W.2d 491, 496 (Iowa 1988); *Northrup v. Miles Homes, Inc.*, 204 N.W.2d 850, 851 (Iowa 1973). Rather, they exist to punish the defendant and to deter the offending party and like-minded individuals from committing similar acts. *Spaur v. Owens–Corn-*

*ing Fiberglas Corp.*, 510 N.W.2d 854, 865 (Iowa 1994); *Beeman*, 496 N.W.2d at 255; *Ryan*, 422 N.W.2d at 496; *Pringle*, 282 N.W.2d at 154; *McCarthy*, 199 N.W.2d at 369.[31] "[P]unitive damages are awarded, not because the plaintiff deserves them, but as punishment, to deter the defendant and others from repeating similar outrageous conduct." *Ezzone v. Riccardi*, 525 N.W.2d 388, 398 (Iowa 1994); *Coster v. Crookham*, 468 N.W.2d 802 (Iowa 1991) (punitive damages "are not awarded as a matter of right," but only to punish the offender and to deter others from conduct which is sufficiently egregious to call for the remedy). The court in *Coster* remarked that

> [a] careful reading of our cases on the subject, especially those filed during the past decade, discloses that demands for punitive damages far exceed the number of cases where they are appropriate. Their assessment has always called for utmost discrimination because, by their very nature, they involve utilization of a rightful indignation which must not amount to passion or prejudice.

*Coster*, 468 N.W.2d at 810–11; *see also Lara v. Thomas*, 512 N.W.2d 777, 783 (Iowa 1994) (punitive damages must not be so excessive as to demonstrate passion and prejudice on the part of the jury); *Ryan*, 422 N.W.2d at 496. Despite the discrimination required in

---

**30.** Although the court has ruled that Amoco did not preserve error on the first three questions regarding punitive damages, no preservation of error as to the fourth challenge is required. Rather, due process requires an opportunity for the defendant to challenge the excessiveness of a punitive damage award post-trial. *See Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 19–22, 111 S.Ct. 1032, 1043–45, 113 L.Ed.2d 1 (1991), and the discussion herein beginning at page 874.

**31.** These purposes of punitive damages have been recognized under Iowa law at least since 1875. In the case of *Ward v. Ward*, 41 Iowa 686 (1875), defendant objected to a jury instruction which authorized the jury to consider an award of exemplary damages to punish the defendant and to serve as an example to deter others from like conduct. *Ward*, 41 Iowa at 687. Defendant argued that punitive damages should operate only to deter the defendant and that the effect upon the public should bear no influence in the award. *Id.* at 688. The court disagreed:

> Among the objects attained by the allowance of exemplary damages are the punishment of the wrong-doer and the example whereby others are deterred from the commission of like wrongs; and it is often said, such damages are allowed for these purposes. Sedgewick on Measure of Damages, p. 584, note 1; 1 Hillard on Torts, p. 251, note *a*; *Anthony v. Gilbert*, 4 Blackf., 348; *Taylor v. Church*, 8 N.Y., [452] 342–460; *Bailey v. Dean*, 5 Barb., 297–303; *Roberts v. Mason*, 10 Ohio St., 277–280.
>
> Indeed it appears that one of the objects of punishment in all cases is to prevent the repetition of the crime by the culprit and others. The example of punishment, is it presumed, will deter others from the commission of the offense in the future.

*Id.* Likewise, almost ninety years prior to *Ward*, in perhaps the earliest punitive damages case in the United States, the jury was instructed "not to estimate the damages by any particular proof of suffering or actual loss; but to give damages for example's sake, to prevent such offences in the future." *Coryell v. Colbaugh*, 1 N.J.L. 77, 77 (1791).

their assessment, punitive damages "serve a vital function in our tort system." *Spaur,* 510 N.W.2d at 865 (quoting *Coster,* 468 N.W.2d at 809).

■ The Iowa legislature has established a statutory standard for the egregiousness of conduct for which punitive damages may be assessed:

Under Iowa Code Section 668A.1 (1991), to receive punitive damages, plaintiff must prove by a preponderance of clear, convincing, and satisfactory evidence that the defendant's conduct amounted to a willful and wanton disregard for the rights or safety of another. The conduct must be more than merely objectionable; it must follow the standards of section 668A.1.

*Beeman,* 496 N.W.2d at 254 (citing *Coster,* 468 N.W.2d at 811); *see also Lara,* 512 N.W.2d at 783 (applying § 668A.1 standards); *Spaur,* 510 N.W.2d at 865 (§ 668A.1 standards must be followed); *Hockenberg Equip. v. Hockenberg's Equip. & Supply Co.,* 510 N.W.2d 153, 157 (Iowa 1993) (same). To receive punitive damages, plaintiff must offer evidence of defendant's persistent course of conduct to show no care by defendant with disregard for the consequences. *Beeman,* 496 N.W.2d at 255; *Kellar v. Peoples Natural Gas Co.,* 352 N.W.2d 688, 693 (Iowa App. 1984).

■ Iowa courts generally defer to a jury's award of punitive damages:

The assessment of damages is traditionally a jury function. Its decision should be disturbed only for the most compelling reasons. We will reduce or set aside a jury award only if it (1) is flagrantly excessive or inadequate; or (2) is so out of reason as to shock the conscience or sense of justice; or (3) raises a presumption it is a result of passion, prejudice, or other ulterior motive; or (4) is lacking in evidentiary support. . . .

The most important of the above enumerated tests is support in the evidence. If the verdict has support in the evidence the others will hardly arise, if it lacks support they all may arise.

*Rees v. O'Malley,* 461 N.W.2d 833, 839 (Iowa 1990) (citing *Olsen v. Drahos,* 229 N.W.2d 741, 742 (Iowa 1975)); *see also Lara v. Thomas,* 512 N.W.2d 777, 783 (Iowa 1994) (passion and prejudice standard); *Spencer v. Spencer,* 479 N.W.2d 293, 298 (Iowa 1991) (quoting *Rees*); *Coster,* 468 N.W.2d at 810–11 (passion or prejudice); *Johnston v. Norfolk Southern Corp.,* 448 N.W.2d 486, 489 (Iowa 1989) (recognizing that past cases had applied a "shock the conscience" standard of review, and applying factors developed under that standard and in later cases); *Ryan,* 422 N.W.2d at 496 (passion or prejudice). In determining whether punitive damages are so excessive that they demonstrate passion and prejudice on the part of the jury, Iowa courts consider whether the punitive damages award is reasonably related to the malicious conduct of the defendant which resulted in actual injury or damage to the plaintiff. *Ryan,* 422 N.W.2d at 496.

■ Iowa courts assessing and reviewing punitive damages are to apply the three-tiered process approved by the United States Supreme Court in *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 19–22, 111 S.Ct. 1032, 1043–46, 113 L.Ed.2d 1 (1991):

(1) jury instructions explaining the nature, purpose, and basis for the award; (2) post-trial procedures for scrutinizing the award; and (3) an appellate review process that ensures the award is reasonable and rational.

*Spaur,* 510 N.W.2d at 866. The parties do not contest that the jury received instructions explaining the nature, purpose, and basis for the award.[32] The court must therefore embark on the second tier in the process of assessment and review by scrutinizing the award of punitive damages in this case.

### 2. *Actual Damages As A Prerequisite To Punitive Damages*

Amoco argues that Pulla did not suffer any actual damages, but merely a technical inju-

---

**32.** Amoco in fact argues that the jury disregarded the requirements of these instructions in awarding punitive damages. Defendant's Brief In Support Of Joint Motions For Judgment As A Matter Of Law And New Trial Or Remittur [sic], at pp. 15–16.

ry, because the jury awarded only "nominal" damages of $1.00 for past mental pain and suffering and $1.00 for future mental pain and suffering. Such an award, and the lack of actual damages Amoco argues it shows, cannot form the basis for an award of punitive damages under Iowa law. Further, Amoco argues, it does not matter whether the award is characterized as actual or nominal damages, because Pulla failed to offer any evidence that he had sustained actual damages. Amoco argues that Pulla was never "reprimanded" or suffered negative consequences at work as the result of examination of his credit card records by Amoco employees, and that his testimony that he felt like he was being watched does not amount to evidence of mental anguish.

Pulla argues that the jury, because it was not instructed on nominal damages, awarded actual damages for which there was adequate supporting evidence in the record, viewing the evidence in the light most favorable to the verdict. Pulla argues that he need only show some injury to sustain a verdict of punitive damages; no award of actual damages is required. Pulla points to his testimony that he suffered from symptoms of paranoia that continue to this day as showing an actual injury.

The court recognizes that there is a split among jurisdictions as to the prerequisites for an award of punitive damages. Some jurisdictions have held that an award of "nominal" damages is sufficient to support an award of punitive damages.[33] Others require *recovery* of actual damages to sustain an

**33.** The following states have held an award of nominal damages can support an award of punitive damages: *See Mason v. Jack Daniel Distillery*, 518 So.2d 130, 135 (Ala.App.1987); *L.A. Draper & Son, Inc. v. Wheelabrator–Frye, Inc.*, 813 F.2d 332, 338 (11th Cir.1987); *Oaksmith v. Brusich*, 774 P.2d 191, 201 (Alaska 1989); *Kizer v. County of San Mateo*, 53 Cal.3d 139, 279 Cal.Rptr. 318, 323, 806 P.2d 1353, 1357 (1991); *McLaughlin v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 23 Cal.App.4th 1132; 29 Cal.Rptr.2d 559, 578 (1994); *Hill v. Allstate Assocs.*, No. 106448, 1993 WL 119758, at *1 (Conn.Super.Ct. Apr. 12, 1993) (mem.); *Marcus v. Funk*, No. 87C–SE–26–1–CV, 1993 WL 141864, at *1 (Del.Super.Ct. Apr. 21, 1993); *King v. Kirlin Enter., Inc.*, 626 A.2d 882, 884 n. 3 (D.C.1993); *Robinson v. Sarisky*, 535 A.2d 901, 907 (D.C.1988); *Adler v. Seligman of Florida, Inc.*, 438 So.2d 1063, 1067 (Fla.Dist. Ct.App.1983); *Lassitter v. Int'l Union of Operating Eng'rs*, 349 So.2d 622, 625–26 (Fla.1976); *Hospital Auth. of Gwinnett Co. v. Jones*, 261 Ga. 613, 409 S.E.2d 501, 503 (1991), *cert. denied*, 502 U.S. 1096, 112 S.Ct. 1175, 117 L.Ed.2d 420 (1992); *Davis v. Gage*, 106 Idaho 735, 682 P.2d 1282, 1286 (Idaho Ct.App.1984); *Brown & Williamson Tobacco Corp. v. Jacobson*, 644 F.Supp. 1240, 1263 (N.D.Ill.1986) (holding a nominal compensatory damages award will support a punitive damage award), *aff'd in part, rev'd in part*, 827 F.2d 1119 (7th Cir.1987), *cert. denied*, 485 U.S. 993, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988); *Keehr v. Consol. Freightways of Delaware, Inc.*, 825 F.2d 133, 140 (7th Cir.1987); *Arlington State Bank v. Colvin*, 545 N.E.2d 572, 580 (Ind.Ct.App. 1989); *Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co. of Des Moines*, 510 N.W.2d 153, 156 (Iowa 1993); *Westway Trading Corp. v. River Terminal Corp.*, 314 N.W.2d 398, 404 (Iowa 1982); *Reazin v. Blue Cross & Blue Shield of Kansas, Inc.*, 663 F.Supp. 1360, 1493 (D.Kan. 1987), *aff'd in part and remanded in part*, 899 F.2d 951 (10th Cir.1990), *cert. denied*, 497 U.S. 1005, 110 S.Ct. 3241, 111 L.Ed.2d 752 (1990); *Fowler v. Mantooth*, 683 S.W.2d 250, 252 (Ky. 1984); *Lawrence v. Risen*, 598 S.W.2d 474, 476 (Ky.Ct.App.1980); *Shell Oil v. Parker*, 265 Md. 631, 291 A.2d 64, 71 (1972); *Wright v. Jasper's Italian Restaurant, Inc.*, 672 F.Supp. 424, 426 (W.D.Mo.1987); *Edwards v. Jewish Hosp. of St. Louis*, 855 F.2d 1345, 1352 (8th Cir.1988) (applying Missouri law); *Weinberg v. Farmers State Bank of Worden*, 231 Mont. 10, 752 P.2d 719, 732 (1988); *Nappe v. Anschelewitz, Barr, Ansell, & Bonello*, 97 N.J. 37, 477 A.2d 1224, 1231 (1984); *Sanchez v. Clayton*, 117 N.M. 761, 877 P.2d 567 (1994); *Hempstead Gen. Hosp. v. Allstate Ins. Co.*, 120 Misc.2d 303, 466 N.Y.S.2d 162, 168 (1983) (holding nominal damages will support punitive damages if actual malice is found); *Burge v. First S. Sav. Bank*, 114 N.C.App. 648, 442 S.E.2d 552, 554 (1994); *Adams v. Canterra Petroleum, Inc.*, 439 N.W.2d 540, 546 (N.D.1989); *Mitterholzer v. Bancsi*, Nos. 61598, 63194, 64928, 1993 WL 215381, at *5 (Ohio Ct.App.1993); *Spaeth v. Union Oil Co.*, 762 F.2d 865, 866 (10th Cir.1985) (applying Oklahoma law, and holding nominal actual damages will support a punitive damage award), *cert. denied*, 476 U.S. 1104, 106 S.Ct. 1946, 90 L.Ed.2d 356 (1986); *Lane County v. Wood*, 298 Or. 191, 691 P.2d 473, 479 (1984) (holding certain intentional acts require no award of actual damages to support a punitive damage award); *Rhoads v. Heberling*, 306 Pa.Super. 35, 451 A.2d 1378, 1381 (1982); *Mazzaroppi v. Tocco*, 533 A.2d 203, 204 (R.I.1987); *Save Charleston Found. v. Murray*, 286 S.C. 170, 333 S.E.2d 60, 65 (1985); *Emerson v. Garner*, 732 S.W.2d 613, 614 (Tenn.Ct.App.1987); *Valley Acceptance Corp. v. Glasby*, 230 Va. 422, 337 S.E.2d 291, 297 (1985); *Jones v. Credit Bureau of Huntington, Inc.*, 184 W.Va. 112, 399 S.E.2d 694, 699 (1990).

award of punitive damages.[34] Still others require only a *showing* of actual damages before punitive damages can be awarded.[35]

Finally, some jurisdictions are split on whether recovery or merely a showing of actual damages will suffice to support a punitive damage award.[36]

**34.** The following states require a recovery of actual damages to support a punitive damage award: *See Robertson Oil Co. v. Phillips Petroleum Co.*, 14 F.3d 373, 381 (8th Cir.1993) (applying Arkansas law), *cert. denied*, —— U.S. ——, 114 S.Ct. 2120, 128 L.Ed.2d 677 (1994); *Pulliam v. Dreiling*, 839 P.2d 521, 524 (Colo.Ct.App.1992); *Post Office v. Portec, Inc.*, 913 F.2d 802, 808 (10th Cir.1990) (applying Colorado law); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1077 (Del.1983); *Russell Corp. v. BancBoston Fin. Co.*, 209 Ga.App. 660, 434 S.E.2d 716, 719 (1993); *Boise Dodge Inc. v. Clark*, 92 Idaho 902, 453 P.2d 551, 556 (1969); *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 523 (Ind.1993); *McConwell v. FMG of Kansas City, Inc.*, 18 Kan.App.2d 839, 861 P.2d 830, 845 (1993); *DiPietro v. Boynton*, 628 A.2d 1019, 1025 (Me.1993); *Caldor, Inc. v. Bowden*, 330 Md. 632, 625 A.2d 959, 973 (1993) (requiring a plaintiff to have both an award of actual damages and a showing of malice for a punitive damage award); *Kohler v. Fletcher*, 442 N.W.2d 169, 173 (Minn.Ct.App. 1989) (holding actual damages must exist to support an award of punitive damages); *Snow Lake Shores Property Owners Corp. v. Smith*, 610 So.2d 357, 362 (Miss.1992); *Imperial Premium Fin. Inc. v. Northland Ins. Co.*, 861 S.W.2d 596, 600 (Mo.Ct.App.1993); *S.J. Amoroso Constr. Co. v. Lazovich & Lazovich*, 107 Nev. 294, 810 P.2d 775, 777 (1991); *Burge v. First S. Sav. Bank*, 114 N.C.App. 648, 442 S.E.2d 552, 554 (1994); *Blair v. Boulger*, 336 N.W.2d 337, 341 (N.D.1983), *cert. denied*, 464 U.S. 995, 104 S.Ct. 491, 78 L.Ed.2d 685 (1983); *State ex rel. Okla. Bar Ass'n v. Todd*, 833 P.2d 260, 267 (Okla.1992); *Time Out, Inc. v. Karras*, 469 N.W.2d 380, 386 (S.D.1991); *Brown v. Petrolite Corp.*, 965 F.2d 38, 49–50 (5th Cir. 1992) (applying Texas law); *Allard v. Ford Motor Credit Co.*, 139 Vt. 162, 422 A.2d 940, 942 (1980); *Murray v. Hadid*, 238 Va. 722, 385 S.E.2d 898, 905 (1989); *Garnes v. Fleming Landfill, Inc.*, 186 W.Va. 656, 413 S.E.2d 897, 908 (1991); *Bittner by Bittner v. Am. Honda Motor Co.*, 181 Wis.2d 93, 511 N.W.2d 325, 330 (Ct.App.1993); *Condict v. Condict*, 664 P.2d 131, 136 n. 3 (Wyo.1983).

**35.** The following states mandate only a "showing" of actual damages: *First Bank of Boaz v. Fielder*, 590 So.2d 893, 899 (Ala.1991) (holding it is not required that a plaintiff recover an actual damage award; rather, the focus of determining whether a punitive damage award is warranted is the evidence of injury and deterrence of the defendant's conduct); *Barber v. Nat'l Bank of Alaska*, 815 P.2d 857, 864 (Alaska 1991); *Haskins v. Shelden*, 558 P.2d 487, 493 (Alaska 1976); *McLaughlin v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 23 Cal.App.4th 1132, 29 Cal.Rptr.2d 559, 578 (Cal.Ct.App.1994); *Ault v. Lohr*, 538 So.2d 454, 456 (Fla.1989) (a finding of liability alone will support an award of punitive damages, even

in the absence of financial loss for which compensation would be appropriate); *Beerman v. Toro Mfg. Corp.*, 1 Haw.App. 111, 615 P.2d 749, 755 (1980); *Disher v. Info. Resources Inc.*, 691 F.Supp. 75, 84 (N.D.Ill.1988) (applying Illinois law); *Hockenberg*, 510 N.W.2d at 156; *Sundholm v. City of Bettendorf*, 389 N.W.2d 849, 853 (Iowa 1986); *Pringle*, 282 N.W.2d at 154; *Speed v. Beurle*, 251 N.W.2d 217, 219 (Iowa 1977); *Claude v. Weaver Constr. Co.*, 261 Iowa 1225, 1229, 158 N.W.2d 139, 143 (1968); *Sebastian v. Wood*, 246 Iowa 94, 100, 66 N.W.2d 841, 844 (1954); *Lawrence v. Risen*, 598 S.W.2d 474, 475 (Ky.Ct.App.1980) (sustaining punitive damage award if plaintiff suffered injury for which compensatory damages might be awarded); *Forsythe v. Elkins*, 216 Mont. 108, 700 P.2d 596, 602 (1985); *Bishop v. Bostick*, 141 A.D.2d 487, 529 N.Y.S.2d 116, 118 (1988); *Weaver v. Colwell Fin. Corp.*, 73 Ohio App.3d 139, 596 N.E.2d 617, 622 (1992); *Goodale v. Lachowski*, 97 Or.App. 158, 775 P.2d 888, 890 (1989) (stating plaintiff needs only to show proof of actual harm); *Schecter v. Watkins*, 395 Pa.Super. 363, 577 A.2d 585, 595 (1990); *Dowling v. Home Buyers Warranty Corp.*, —— S.C. ——, 428 S.E.2d 709, 711 (S.C.1993); *Solomon v. First Am. Nat'l Bank of Nashville*, 774 S.W.2d 935, 943 (Tenn.Ct.App.1989); *Atkin Wright & Miles v. Mountain States Telephone & Telegraph Co.*, 709 P.2d 330, 337 (Utah 1985).

**36.** The following states are examples of states split as to whether recovery, or merely a showing of actual damages will suffice to support a punitive damage award: *Quiroga v. Allstate Ins. Co.*, 151 Ariz. 127, 726 P.2d 224, 226 (Ct.App.1986) (holding recovery of actual damages is necessary to support a punitive damage award; *but see Wyatt v. Wehmueller*, 167 Ariz. 281, 806 P.2d 870, 874 (Ariz.1991) (holding the plaintiff must have "suffered" actual damages to support a punitive damage award; *Nappe v. Anschelewitz, Barr, Ansell, & Bonello*, 97 N.J. 37, 477 A.2d 1224, 1231 (1984) (awarding punitive damages whether or not compensatory damages were awarded, so long as "some injury" occurred); *but see O'Connor v. Harms*, 111 N.J.Super. 22, 266 A.2d 605, 608 (1970) (holding there can be no punitive damage award in the absence of an actual damage award or violation of a legal right); *Gonzales v. Sansoy*, 103 N.M. 127, 703 P.2d 904, 906 (N.M.Ct.App.1984) (holding an award for punitive damages must be supported by an award of compensatory damages; *but see Sanchez v. Clayton*, 117 N.M. 761, 877 P.2d 567 (N.M.1994) (holding the key to determining whether punitive damages may be awarded absent actual damages is the nature of the case). In *Sanchez*, the court held an award for punitive damages must be supported by an established cause of action, regardless of whether actual

The Iowa Supreme Court, however, has consistently held since its decision in *Pringle*, 282 N.W.2d 151, that only a "showing" of actual damage is necessary to support an award of punitive damages. *Pringle*, 282 N.W.2d at 153–54.[37] In *Pringle*, the court said

> [h]arm has been established when the record shows actual damage has been suffered, even though for one reason or another the damages have not been computed or awarded. Therefore we hold that a failure to award actual damages will not bar exemplary damages when actual damage has in fact been shown.

*Id.* at 154. *See also Hockenberg*, 510 N.W.2d at 156; *Ryan*, 422 N.W.2d at 496; *Sundholm v. City of Bettendorf*, 389 N.W.2d 849, 853 (Iowa 1986); *Suss v. Schammel*, 375 N.W.2d 252, 255 (Iowa 1985); *Westway Trading Corp. v. River Terminal Corp.*, 314 N.W.2d 398, 404 (Iowa 1982). Punitive damages would be allowable under state law if actual damages occurred notwithstanding that they were not allowed by the jury—provided, of course, that punitive damages were otherwise allowable. *Dickerson v. Young*, 332 N.W.2d 93, 99 (Iowa 1983) (citing *Pringle*) (but in that case, the jury did award actual damages and the record sustained those damages, so that punitive damages were allowed even though the instruction given misstated state law). However, where there is no evidence in the record of actual damages,

a claim for punitive damages should not be submitted and no award of punitive damages should be sustained. *See, e.g., Sundholm*, 389 N.W.2d at 853 (no actual damages were suffered so there was no error in refusing to submit claim for punitive damages; evidence did not otherwise show entitlement to punitive damages); *Suss v. Schammel*, 375 N.W.2d 252, 255 (Iowa 1985) (no actual damages were shown, so no punitive damages could be awarded, because plaintiff's "frustration" and "exasperation" did not amount to evidence of actual damages).

The predicate for punitive damages under *Pringle* is satisfied, however, if there is substantial evidence in the record to support the trial court's finding that plaintiff suffered actual damages but insufficient evidence to support a determination of their amount. *Westway Trading*, 314 N.W.2d at 404. Similarly, the plaintiff need only show that the defendant actually caused plaintiff some injury to sustain a verdict for nominal compensatory damages (for example, one dollar) and punitive damages. *Hockenberg*, 510 N.W.2d at 156 (citing *Pringle* and *Sundholm*).

In the present case, the jury instruction given informed the jury that it could award damages for past and future mental pain and suffering, defined those items of damage, and explained how an amount was to be calculated.[38] Surprisingly,

damages or nominal damages or no damages are awarded. *Id.* 877 P.2d at 573. The court stated:

> We believe that "[t]he most reasonable interpretation of the supposed actual damages requirement is that it is really a defective formulation of an entirely different idea—that the plaintiff must establish a cause of action before punitive damages can be awarded.... Once the facts accepted by the trier show a valid cause of action, however, there seems no reason to deny punitive damages merely because the plaintiff's damages are not pecuniary, or because the jury awards nominal damages, or because it lumps all damages under the punitive label. Indeed, if the defendant's conduct otherwise warrants punitive liability, the need for punishment or deterrence may be increased by reason of the very fact that the defendant will have no liability for compensatory damages."

*Id.* (quoting 1 Dan B. Dobbs, Law Of Remedies § 3.11(20), at 515–16 (2d ed.1993)).

37. *Pringle* was not the first case in which the Iowa Supreme Court suggested that it was a *showing*, rather than an award, of actual damages was the prerequisite to an award of actual damages. In 1898 the Iowa Supreme Court held that "[n]o actual damages resulting from the [wrongful conduct] are *shown*, and, as there were no actual damages, punitive damages cannot be assessed, no matter how malicious the defendants' conduct." *Boardman v. Marshalltown Grocery Co.*, 105 Iowa 445, 75 N.W. 343, 345 (1898) (emphasis added).

38. Instruction No. 24, entitled Invasion of Privacy—Damages, stated in its entirety:

> If you find for Plaintiff Pulla on his invasion of privacy claim under Instruction No. 21, you shall consider the following items of damage: mental pain and suffering from the date of injury to the present time; the present value of future mental pain and suffering. Mental pain and suffering may include, but is not limited to mental anguish or loss of enjoyment of life.

based on Pulla's limited damages testimony on the invasion of privacy claim, no nominal damages instruction was requested by either party.[39] The court concludes that the jury found plaintiff suffered actual damages but either had insufficient evidence to support a *determination* of their amount, *Westway Trading*, 314 N.W.2d at 404,[40] or concluded that the fair value of Pulla's actual damages on the invasion of privacy claim was only two dollars. They therefore awarded $1.00 each as *actual damages* for past and future mental pain and suffering. Such an *award* of actual damages plainly satisfies the *Pringle* standard that actual damages be *shown*. Furthermore, the court concludes that there was sufficient evidence of actual damages, in Pulla's testimony of feelings of being watched constantly, embarrassment or humiliation from several employees being aware that his credit card records had been reviewed and placement of those records in his personnel file, and the requirement imposed upon him and no other Amoco employee that he see a company doctor to verify his use of sick leave, such that a reasonable jury could award actual damages.

However, even if the jury's award was only for "nominal" damages in the amount of $1.00 each for past and future mental pain and suffering, under *Hockenberg*, such an award is sufficient to support a punitive damage award. In *Hockenberg*, the jury received no nominal damages instruction, yet it awarded the plaintiff damages of $1.00 characterized by the court as "nominal compensatory damages." *Hockenberg*, 510 N.W.2d at 156. The court changed its label of this award of damages throughout the opinion, sometimes calling it "nominal damages," *Id.*, and at other times, "compensatory damages." *Id.* at 154. Whatever the denomination of the damages, the court held "this award constitute[d] a showing of actual damages that the jury could supplement with a punitive damage award." *Id.* at 156. Thus, an award of the kind made by the jury in both *Hockenberg* and in this case meets the *Pringle* predicate for a punitive award. The defendant's motions must fail on this ground.

### 3. Malice

Amoco argues that there was insufficient evidence of malice to support an award of punitive damages in this case. Amoco argues that although Ms. Leckband testified that she was "mad" at Pulla for what she

---

If you determine that Plaintiff Pulla is entitled to future mental pain and suffering, you should utilize Instruction No. 2[5] to determine the present value of the future mental pain and suffering.

The amount you assess for mental pain and suffering in the past and in the future may not be measured by any exact or mathematical standard. You must use your sound judgment based upon an impartial consideration of the evidence. Your judgment must not be exercised arbitrarily, or out of sympathy or prejudice for or against the parties. The amount you assess for any item of damage on Plaintiff Pulla's invasion of privacy claim may not exceed the amount caused by Defendant Amoco as proved by the evidence.

The amounts, if any, you find for each of the above items will be used to answer the special verdict form with interrogatories at the end of these instructions.

**39.** The Iowa Model Civil Jury Instructions do not contain a nominal damages instruction. A typical example of such an instruction is the following:

If you find that the plaintiff is entitled to a verdict in accordance with these instructions, but do not find that the plaintiff has sustained substantial (actual) damages, then you may return a verdict for the plaintiff in some nominal sum such as one dollar (on account of actual damages).

(The award of a nominal sum on account of actual damages would not preclude your awarding punitive damages in such amount as you deem appropriate, if you find that the award of punitive damages is justified under these instructions.)

Devitt, Blackmar, Wolff, Federal Jury Practice And Instructions: Civil, 4th ed., § 85.18.

**40.** The court in *Westway Trading* first quoted the excerpt from *Pringle* cited by this court at p. 877, then concluded that

[i]n the present case we have found substantial evidence to support the trial court's finding that plaintiff suffered actual damages *but insufficient evidence to support determination of their amount*. The predicate for an exemplary damage award under *Pringle* has thus been satisfied.

*Westway Trading*, 314 N.W.2d at 404 (emphasis added). Thus, under Iowa law findings of damage and determination of their amount are separate questions, and inadequacy of evidence on the determination question does not bar recovery of actual or punitive damages.

perceived to be an abuse of his sick leave, nothing in the record shows the necessary "spite, hatred, or ill will" towards Pulla, and any harm to him was so slight, that punitive damages cannot be sustained. Amoco also asserts that no one else at the company had actual knowledge of employees reviewing other employees' credit card records, and on this occasion Ms. Leckband was emphatically told not to repeat her conduct. Amoco argues that this shows no disregard for Pulla's rights by the company. Finally, Amoco argues that none of the conduct complained of is sufficiently egregious to warrant a finding of malice even if Amoco was negligent in not preventing or discovering Ms. Leckband's conduct. Pulla argues that Amoco disregarded Pulla's right to privacy of his records by examining them and that Amoco continues to assert that it could do so, thus showing willful disregard for Pulla's rights sufficient for punitive damages to be awarded.

As was stated above, Iowa Code § 668A.1, enacted in 1988, established the standards for the egregiousness of conduct that will sustain punitive damages as "willful and wanton disregard for the rights or safety of another." Iowa courts have continued to refer to this requirement as a showing of actual or legal malice, and also treat the standard in § 668A.1 as a codification of the court's prior standards for malice. *Coster*, 468 N.W.2d at 810–11, *but see Hockenberg*, 510 N.W.2d at 159 (stating that enactment of § 668A.1 "displaced all" prior cases with respect to the standard for recovery of punitive damages in case distinguishing between standards for award of punitive damages and standards for award of attorneys fees). Under § 668A.1, malice must be established by "a preponderance of clear, convincing, and satisfactory evidence." The court must first determine, by examining cases decided since the enactment of § 668A.1, what it is that must be shown, then determine whether there was sufficient evidence of it in this case to meet the requirements of § 668A.1.

### a. "Malice" Defined

In order to support a claim for punitive damages, a plaintiff must show that the defendant's conduct was willful and wanton, that is, constituted actual or legal malice. *Reed v. Chrysler Corp.*, 494 N.W.2d 224, 229 (Iowa 1992); *Shepherd Components, Inc. v. Brice Petrides–Donohue & Assocs., Inc.*, 473 N.W.2d 612, 617 (Iowa 1991); *Coster*, 468 N.W.2d at 811. The conduct must be more than merely objectionable. *Hockenberg*, 510 N.W.2d at 156; *Beeman*, 496 N.W.2d at 254 (citing *Coster*, 468 N.W.2d at 811). Conduct is willful and wanton when the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow. *Vlotho v. Hardin County*, 509 N.W.2d 350, 356 (Iowa 1993) (quoting *Fell*, infra);[41] *Fell v. Kewanee Farm Equip. Co.*, 457 N.W.2d 911, 919 (Iowa 1990) (quoting PROSSER & KEETON ON TORTS § 34, at 213 (5th ed. 1984)); *Larson v. Great West Cas. Co.*, 482 N.W.2d 170, 174 (Iowa App.1992). Actual malice is shown by such things as personal spite, hatred, or ill will. *Mills v. Guthrie County Rural Elec. Coop. Ass'n*, 454 N.W.2d 846, 849 (Iowa 1990); *Seraji v. Perket*, 452 N.W.2d 399, 401 (Iowa 1990); *Parks v. City of Marshalltown*, 440 N.W.2d 377, 379 (Iowa 1989); *Larson*, 482 N.W.2d at 174. A showing of wrongful conduct committed or continued with a willful or reckless disregard for another's rights is sufficient to show legal malice. *Shepherd Components*, 473 N.W.2d at 617 (citing *Feeney v. Scott County*, 290 N.W.2d 885, 892 (Iowa 1980)); *Parks*, 440 N.W.2d at 379; *Mills*, 454 N.W.2d at 849; *Seraji*, 452 N.W.2d at 401; *Larson*, 482 N.W.2d at 174. *See also Seibert v. Noble*, 499 N.W.2d 3, 8 (Iowa 1993) (blurring the distinction between actual and legal malice, stating that punitive damages may be awarded upon a showing that defendant acted with "willful and wanton disregard to the rights and safety of another, or that personal spite, hatred, or ill-will existed.").

---

41. In *Vlotho*, the court noted that courts have used the terms "willful, "wanton," and "reckless" as meaning the same thing in their discus-sions of standards for punitive damages. *Vlotho*, 509 N.W.2d at 356.

### b. What Conduct Is Sufficient To Show Malice?

■ In recent cases, Iowa courts have rarely had any evidence of actual malice, in the form of personal spite, hatred, or ill will, to consider, but have instead considered whether the defendant's conduct raised an inference of legal malice. *See, e.g., Clark–Peterson Co., Inc. v. Independent Ins. Assocs., Ltd.,* 514 N.W.2d 912, 916 (Iowa 1994) (considering only whether legal malice had been shown). Various cases demonstrate that willful and wanton disregard for the rights of another can be shown by the defendant's intentional violation of a constitutional, statutory, common-law, or contractual right, or violation of a court order. For example, in *Lara,* the court found substantial evidence in the record from which the jury could conclude that the defendant acted with willful and wanton disregard for the plaintiff's rights. *Lara,* 512 N.W.2d at 783. The record showed that defendant had intentionally misrepresented his obligations to comply with the minimum wage and overtime laws, and promised plaintiff continued employment but then discharged her. *Id.* at 782. Intent to harm others by depriving them of property rights by fraud was held to be sufficient for punitive damages to lie in *Steckelberg v. Randolph,* 448 N.W.2d 458, 463 (Iowa 1989). In *Hockenberg,* the defendant admitted knowingly violating the terms of an injunction, and the court determined that such conduct was sufficient to support the jury's finding of willful and wanton disregard of rights supporting punitive damages. *Hockenberg,* 510 N.W.2d at 157.

■ Intentional violation of recognized standards of conduct, particularly by those in positions of trust, can also demonstrate willful and wanton disregard for the rights of others sufficient to sustain punitive damages. Although in *Coster,* the court considered that there was insufficient evidence of malice where the defendant loaned trust assets to a third person where the plaintiff had actually entreated the defendant to make the loan, it considered submission of the punitive damages claim appropriate on a claim that the trustee of assets had engaged in self-dealing. *Coster,* 468 N.W.2d at 811. The court considered the self-dealing conduct sufficiently egregious to qualify for punitive damages under the legal malice standard. *Id.*

■ Continuation of conduct a defendant has recognized as injurious also sustains an award of punitive damages. In *Shepherd Components,* the court found that there was sufficient evidence of legal malice for submission of a punitive damages claim where plaintiff complained to defendant construction company that their building methods were causing damage to plaintiff's premises, defendant said the damage could not be repaired and still continued to use the same construction methods, which increased plaintiff's problems and culminated in the entire collapse of a wall. *Shepherd Components,* 473 N.W.2d at 618.

■ The Iowa court has held that there was insufficient evidence of willful and wanton conduct in less clearly definable situations. In *Vlotho,* the court concluded that, although it was a close question, a party had not shown sufficient reckless disregard for the rights of the county when he demolished a bridge belonging to the county because the record demonstrated that his actions had not been based on evil motive or reckless indifference, but on an "assumption that was incorrect" that he was entitled to demolish the bridge. *Vlotho,* 509 N.W.2d at 355–56. Where the plaintiff conceded that the defendant had not been motivated by ill will and had not lied to him, the Iowa Supreme Court concluded that the trial judge properly removed the question of punitive damages from jury consideration. *Seibert,* 499 N.W.2d at 8. Where a third-party determination of rights has been necessary, a party cannot be found to have acted in willful and wanton disregard of those rights. *Clark–Peterson,* 514 N.W.2d at 916. In *Clark–Peterson,* a contract dispute involving insurance coverage, the court found that failure to provide coverage allegedly agreed upon did not show willful or reckless disregard for the plaintiff's rights. *Id.* The parties had previously required a declaratory judgment to determine what coverage had been agreed upon. *Id.* at 914.

■ In the context of a products liability action, the Iowa court has used a risk-utility

analysis to determine whether the defendant acted with willful and wanton disregard for the consumer's rights or safety:

> Plaintiff contends that [the defendant's] generalized knowledge of possible danger, coupled with defendant's failure to test an emergency stop device, generated a jury question on punitive damages. We believe this evidence supports precisely the opposite conclusion—namely, that an award of punitive damages is inappropriate when room exists for reasonable disagreement over the relative risks and utilities of the conduct and device at issue.

*Hillrichs v. Avco Corp.*, 514 N.W.2d 94, 100 (Iowa 1994). The court noted that there was no evidence that the manufacturer decided not to install an emergency stop device for its own economic advantage, and concluded its decision was not in unreasonable disregard for a risk of highly probable harm. *Id.* Therefore, the court concluded that a jury might find the conduct negligent, but could not find it to be in willful and wanton disregard for the rights of others. *Id.* *See also Fell*, 457 N.W.2d at 920 (failure to install gear guard on product was not willful and wanton because not in disregard of known injuries or based on economic reasons). Also, where a defendant lacks specific knowledge of a potential harm and its conduct does not set it apart from others with the same general knowledge, the defendant may have acted negligently, but has not acted with willful and wanton disregard for the rights of others such that punitive damages will lie. *Beeman*, 496 N.W.2d at 256 (asbestos manufacturer had no special knowledge of hazard and had not acted in a manner that set it apart from other manufacturers). *See also Reed*, 494 N.W.2d at 229 (automobile manufacturer had not departed from conduct of other manufacturers with regard to hazard), *and compare Tratchel v. Essex Group, Inc.,*

452 N.W.2d 171, 177 (Iowa 1990) (only one prior personal injury resulting from gas control unit, but defendant was aware that injury would result when a leakage occurred, had received hundreds of leakage reports, but did not attempt to correct the defect).

### c. Sufficiency Of Evidence Of Malice In This Case

In the present case, the jury found an invasion of Pulla's right to privacy when Amoco employees reviewed his credit card records without any authorization from Pulla for the purpose of verifying their own suspicions that Pulla was abusing sick leave. No contract or policy of Amoco permitted such conduct, and Mr. Wieczorek, who was the supervisor of sales authorization and investigation, acknowledged that the conduct was inappropriate when he reprimanded Ms. Leckband and told her that review of credit card records "must not be done" and that they "not look at it again." [42] Despite Amoco's assertion that Ms. Leckband could reasonably have believed that any possible harm that would arise from her conduct was slight when balanced against her purposes,[43] the jury could reasonably have concluded that such a view of the possible harm was unwarranted, and this court, on its own review, comes to the same conclusion. Ms. Leckband's view of the possible harm to Pulla may have been founded more on a belief that Pulla would not learn of the conduct, or not learn who had perpetrated it, than on a realistic view of the possible harm that might result from improper review of records generally acknowledged to be confidential.

The jury could reasonably have concluded that Ms. Leckband acted with spite or ill-will in attempting to catch Pulla in misuse of sick leave by such an underhanded method. This court's review of the evidence, for the purposes of considering the motion for new trial,

**42.** Transcript of Proceedings, Volume III, Testimony of Mr. Wieczorek, pp. 145–161.

**43.** Amoco asserts that Leckband's reasonable belief that little harm would come to Pulla as the result of her conduct shows that punitive damages are inappropriate, citing *Larson*, 482 N.W.2d at 174–75. However, this court does not believe that this factor is consistent with the

requirement that the focus of the appropriateness of punitive damages is the wrongfulness of the defendant's conduct and the potential harm it may cause, not the degree of harm to the plaintiff. *See, e.g., Spaur*, 510 N.W.2d at 867 (" 'our primary focus in review of a punitive damage award is the relationship between the punitive damage award and the wrongful conduct of the offending party.' *Ryan*, 422 N.W.2d at 496."), and the discussion *infra* beginning at p. 882.

leads it to conclude that ill will at the least was shown by Ms. Leckband's conduct. Although it is perhaps a close question, the punitive damages award in this case is sustainable on the basis of a showing of actual malice.

██ The court believes that the evidence certainly establishes legal malice. A showing of wrongful conduct committed or continued with a willful or reckless disregard for another's rights is sufficient to show legal malice. *Shepherd Components,* 473 N.W.2d at 617 (citing *Feeney v. Scott County,* 290 N.W.2d 885, 892 (Iowa 1980)); *Parks,* 440 N.W.2d at 379; *Mills,* 454 N.W.2d at 849; *Seraji,* 452 N.W.2d at 401; *Larson,* 482 N.W.2d at 174. Amoco argues that Ms. Leckband engaged in the challenged conduct only once and was promptly reprimanded for it. However, the court concludes that focusing solely on Ms. Leckband's conduct is inappropriate in light of the evidence. In this case, Ms. Leckband's conduct was committed with a complete disregard for any privacy rights Pulla might have had in his credit card records. Further, Mr. Wieczorek acknowledged that Ms. Leckband's conduct in obtaining and reviewing Pulla's credit card records without Pulla's consent was wrong. However, he then immediately engaged in the same conduct by having another employee, Diana Scott, obtain and copy Pulla's records which Mr. Wieczorek personally delivered to the human resources office to be placed in Pulla's personnel file. Mr. Wieczorek denied having read Pulla's records himself. Nonetheless, no witness was able to account for the marks on the copy of Pulla's records placed in his employment file next to certain dates that Ms. Leckband had attempted to show were Pulla's improper sick leave days. The jury was entitled to conclude that someone at Amoco, most likely Ms. Leckband or Mr. Wieczorek, made those marks, further demonstrating the continuation of conduct acknowledged to be wrong. Amoco is not entitled to post-trial judgment as a matter of law on the ground that there was insufficient evidence of malice in the record. The court concludes from its own weighing of the evidence and assessment of the credibility of the witnesses,[44] as authorized by *Pence,* 961 F.2d at 780, that no new trial should be granted either.

### 4. Ratification And Punitive Damages

In addition to attacking its liability for invasion of privacy on the basis that there is no evidence that it ratified any wrongful conduct, Amoco asserts that the lack of evidence of ratification also means it cannot be held liable for punitive damages. The court need not repeat its discussion of the ratification issue presented in section II.C.2.d. of this ruling, *supra,* beginning at page 870. The court concluded that a reasonable jury could find that Amoco ratified the wrongful conduct of its employee, or that an employee with managerial capacity actually engaged in the wrongful conduct. The court concurs in the jury's verdict that Amoco ratified the wrongful conduct. Therefore, Amoco cannot escape liability for punitive damages on this ground.

### 5. Was The Punitive Damage Award Excessive?

██ Amoco argues that even if the jury was entitled to award punitive damages, the award of punitive damages in this case is excessive and violates Amoco's due process rights.[45] Amoco argues that the punitive

---

44. The court has used the factors identified in n. 20, *supra,* to assess the credibility of Mr. Wieczorek's evidence and other testimony. As a result, the court found Mr. Wieczorek's testimony that he did not review the documents he asked Diana Scott to print out and that he testified he personally took to the personnel department to be unworthy of belief.

45. In a recent case the United States Supreme Court noted that "[j]udicial review of the size of punitive damage awards has been a safeguard against excessive verdicts for as long as punitive damages have been awarded." *Honda Motor* *Co., Ltd. v. Oberg,* —— U.S. ——, ——, 114 S.Ct. 2331, 2335, 129 L.Ed.2d 336 (1994) (Oregon's denial of judicial review of size of punitive damage award violates due process). The Court noted that in the English case of *Huckle v. Money,* 2 Wils. 205, 95 Eng.Rep. 768 (C.P.1763),

the Chief Justice explicitly rejected plaintiff's absolute rule against review of damages amounts. Instead, he noted that when the damages are "outrageous" and "all mankind at first blush must think so," a court may grant a new trial "for excessive damages." [*Huckle,* 2 Wils.] at, 207, 95 Eng.Rep., at 769.

damages award was clearly excessive because it was 250,000 times the actual damages award. Amoco argues that such a large punitive award for a trivial wrong is inappropriate. Amoco also argues that the record does not establish that Amoco ever approved of the review of Pulla's or other employees' credit card records, and in fact specifically instructed the employee involved in this case that such a thing must not happen again. Amoco did not share the information with anyone, did not profit from it, and did not damage Pulla. Amoco also points out that its conduct was not criminal. In light of the record, Amoco argues that the punitive award was not reasonable.

Pulla argues that the jury's award should not be set aside since there is no showing of passion or prejudice in the verdict. Pulla argues that the jury could properly have awarded the amount it did in punitive damages to deter Amoco and others from similar egregious conduct and to punish Amoco for its conduct in this case.

The United States Supreme Court recently addressed the standards for determining whether a punitive damage award is so excessive as to violate due process. *TXO Production Corp. v. Alliance Resources Corp.*, —— U.S. ——, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993). TXO complained of a punitive damage award of $10 million based on an actual damages award of $19,000, a ration of

526:1. *TXO*, —— U.S. at —— and ——, 113 S.Ct. at 2714 and 2718. The Court held that the Fourteenth Amendment imposes substantive limits on punitive damages awards, but rejected TXO's desire for some heightened scrutiny of the reasonableness of punitive damages awards. *Id.* at ——, 113 S.Ct. at 2718. The Court also rejected TXO's desire to formulate a "test" based on objective factors or criteria. *Id.* at —— – ——, 113 S.Ct. at 2718–20. The Court cited its previous opinion in *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), and again rejected a "bright line" test, but it also rejected Alliance's arguments for a standard of "rational basis scrutiny." *Id.* The Court believed that a "rational basis scrutiny standard" would "apparently uphold *any* award that would serve the legitimate state interest in deterring or punishing wrongful conduct, no matter how large." *Id.* at ——, 113 S.Ct. at 2719. The Court, relying on *Haslip*, concluded that the proper focus was on a "general concern for reasonableness." *Id.* at ——, 113 S.Ct. at 2720.

TXO stressed what it considered the lack of a reasonable relationship or proportion between the actual and punitive damages awards. *Id.* at ——, 113 S.Ct. at 2721. In *Haslip*, after all, the punitive damages award had been a mere four times the actual damages award and the Court had described that

---

*Id.* The Court's survey of the history of judicial review of punitive damage awards showed that English cases after *Huckle*, "while generally deferring to the jury's determination of damages, steadfastly upheld the court's power to order new trials solely on the basis that the damages were too high." *Id.* The Court noted further that

> [c]ommon law courts in the United States followed their English predecessors in providing judicial review of the size of damage awards. They too emphasized the deference ordinarily afforded jury verdicts, but they recognized that juries sometimes awarded damages so high as to require correction....

In the 19th century, both before and after the ratification of the Fourteenth Amendment, many American courts reviewed damages for "partiality" or "passion and prejudice." Nevertheless, because of the difficulty of probing juror reasoning, passion and prejudice review was, in fact, review of the amount of awards. Judges would infer passion, prejudice, or partiality from the size of the award....

Nineteenth century treatises similarly recognized judges' authority to award new trials on the basis of the size of damage awards....

Modern practice is consistent with these earlier authorities. In the federal courts and in every State, except Oregon, judges review the size of damage awards. *See Dagnello v. Long Island R. Co.*, 289 F.2d 797, 799–800 n. 1 (CA2 1961) (citing cases from all 50 States except Alaska, Maryland, and Oregon); *Nome v. Ailak*, 570 P.2d 162, 173–174 (Alaska 1977); *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., Inc.*, 88 Md.App. 672, 596 A.2d 687, 709–711, 716–722 (1991), *cert. denied*, 326 Md. 435, 605 A.2d 137 (Md.1992); *Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768 (Tex.App.1987); *Grimshaw v. Ford Motor Co.*, 119 Cal.App.3d 757, 174 Cal.Rptr. 348 (1981); Draper, Excessiveness or Inadequacy of Punitive Damages Awarded in Personal Injury or Death Cases, 12 A.L.R.5th 195 (1993); Schapper, Judges Against Juries—Appellate Review of Federal Civil Jury Verdicts, 1989 Wis.L.Rev. 237. *Id.* at —— – ——, 114 S.Ct. at 2336–38.

as "close to the line" of constitutional permissibility. *Id.* In *TXO*, however, the Court said the relationship between actual and punitive damages was only one of several factors a jury could permissibility consider. *Id.* The Court concluded that a jury could take into account the *potential harm* to the intended victim of the wrongdoer's actions and the possible harm to other victims if the conduct was not deterred. *Id.* at —— ——, 113 S.Ct. at 2721–22. The Court concluded that the "shocking disparity" between the actual and punitive awards dissipated when one considered the potential loss to the plaintiff of millions of dollars in royalties and the potential harm to others if TXO persisted in such conduct. *Id.* at ——, 113 S.Ct. at 2722.[46]

The Eighth Circuit Court of Appeals has also recently addressed the constitutionality of a punitive damages award in an *en banc* decision in *Robertson Oil Co., Inc. v. Phillips Petroleum Co.,* 14 F.3d 373 (1993). In the *Robertson Oil* case, Phillips had been assessed $750,000 in actual damages, $4 million in punitive damages on a claim of tortious interference with a business relationship, and another $4 million in punitive damages for fraud. *Robertson Oil,* 14 F.3d at 375. Phil-

lips challenged the award first on the ground that Arkansas' "shock the conscience" standard was unconstitutional. *Id.* at 376.[47] The Eighth Circuit Court of Appeals held that the standard had a "definite shape and texture" because of the inquiries Arkansas courts made under that standard, and found that the trial court had made a number of specific inquiries in reviewing the jury award in this case. *Id.* Phillips then challenged specific factors the jury was allowed to consider. *Id.* at 380–81. The Eighth Circuit Court of Appeals held that under *TXO*, the jury could consider the "potential harm" of defendant's conduct, the defendant's "financial worth," and the defendant's "malice." *Id.*

Decisions of the Iowa Supreme Court reflect the same constitutional concerns as these federal decisions and demonstrate that Iowa's standards for review of punitive damage awards have a definite shape and texture. In order for the post-trial review process to provide sufficiently meaningful constraint on the jury, the Iowa Supreme Court adopted the factors approved by the United States Supreme Court in *Haslip*. *Spaur,* 510 N.W.2d at 867. These include:

---

46. Punitive damages have traditionally borne "disproportionate" ratios to compensatory damages; indeed, one of their historical *raisons d'etre* is to provide a needed additional penalty precisely where compensatory damages are low but the potential for harm was great. In language applicable here, an American court instructing on punitive damages in the mid-nineteenth century explained that "the damages should be in proportion to the degree of malice, and should not be restricted to a mere compensation for the injury actually done, however short it may be of the injury intended," and a defendant should not "be protected from exemplary damages, because the plaintiff's high character made the assault harmless." *Gilreath v. Allen,* 32 N.C. 67, 70 (1849). *See also New Orleans, J. & Great N.R. Co. v. Hurst,* 36 Miss. 660, 667 (1859) (punitive damages of $4,500 where plaintiff suffered no out-of-pocket loss); *Reed v. Davis,* 4 Pick. 216, 217 (Ma.1826) (punitive damages of $500 where "little or no damage done"); T. Sedgwick, Measure of Damages 531 (4th ed. 1868) (reporting case of $3,000 punitive damages for actual loss of $20); *Edwards v. Beach,* 3 Day 447, 450 (Conn.1809) (amount of injury to property "is not the only ground of damages"; were it so, "a person so disposed might forcibly dispossess another of an article of property at his pleasure,

and compel the owner ... to accept of the value in its stead."); *Dorsey v. Manlove,* 14 Cal. 553, 556 (1860); *Clark v. Bales,* 15 Ark. 452, 459 (1855); *Treat v. Barber,* 7 Conn. 274, 279 (1828); *Linsley v. Bushnell,* 15 Conn. 225, 236 (1842); *McNamara v. King,* 7 Ill. (2 Gilm.) 432, 436 (1845); *Whipple v. Walpole,* 10 N.H. 130, 132–33 (1839); *Taylor v. Grand Trunk Ry.,* 48 N.H. 304, 318–19 (1869); *Lynd v. Picket,* 7 Minn. 184, 200–01 (1862); *McWilliams v. Bragg,* 3 Wis. 424, 426–29 (1854); *Parsons v. Harper,* 57 Va. 64, 78 (1860); *Richmond & D.R.R. v. Freeman,* 97 Ala. 289, 294, 11 So. 800 (1892). Punitive damages were also employed to "discourage [the] repetition" of acts with large potential for social harm, irrespective of whether the potential was realized in the individual case. *Singer Mfg. Co. v. Holdfodt,* 86 Ill. 455, 460–61 (1877); *see also Whipple,* 10 N.H. at 132–33.

47. Incidentally, the Eighth Circuit Court of Appeals noted that "Arkansas, as well as most jurisdictions, follows the rule that an award of compensatory damages must exist before a jury can award punitive damages," citing *Lake v. Lake,* 262 Ark. 852, 562 S.W.2d 68, 69 (1978). *Robertson Oil,* 14 F.3d at 381. Iowa, however, is not one of these jurisdictions, as was discussed above.

(1) the defendant's degree of culpability; (2) duration of conduct; (3) defendant's awareness or concealment; (4) the existence of similar past conduct; (5) the likelihood the award will deter the defendant or others from like conduct; (6) the profitability of the wrongful conduct and the desirability of removing that profit; (7) the financial position of the defendant; (8) all the costs of litigation; (9) the imposition of criminal sanctions; and (10) the existence of other civil awards against the defendant for the same conduct. [*Haslip*, 499 U.S.] at 21–22, 111 S.Ct. at 1045, 113 L.Ed.2d at 22; *see also Morgan v. Woessner*, 997 F.2d 1244, 1257 n. 4 (9th Cir.1993).

*Id.* The Iowa Supreme Court concluded that it should look at these factors and "others using a general standard of reasonableness to determine at the time of the postverdict review whether a punitive damage award should be upheld." *Id.*

The Iowa Supreme Court, like the United States Supreme Court in *TXO*, has rejected the idea that a determination of the reasonableness of a punitive damages award should focus on the proportionality of the punitive and actual damages award. *Hockenberg*, 510 N.W.2d at 157 (citing *TXO* for this proposition); *Ryan*, 422 N.W.2d at 496 ("An inflexible mathematical ratio which focuses on the plaintiff's injuries rather than the wrongful acts of the defendant fails to accomplish the policy objectives of punishment and deterrence," citing jurisdictions that reject such a ratio); *Northrup*, 204 N.W.2d at 861 ("There is no set mathematical ratio between actual and exemplary damages," because to be effective in their purposes, "the exemplary damages awarded must be relatively large."); *McCarthy*, 199 N.W.2d at 369–70 (expressly rejecting the use of a mathematical ratio in examining punitive damages).[48] Further-

---

48. Other jurisdictions are split on the importance of a mathematical relationship or reasonable ratio between the punitive and actual damages awarded. The following states still consider the reasonable ratio between actual damages and punitive damages to be, at a minimum, a factor to be considered in evaluating the excessiveness of a punitive damages award: *See Cameron v. Beard*, 864 P.2d 538, 551 (Alaska 1993) (holding a reasonable ratio between actual damages and punitive damages is a factor to be equally considered with the magnitude of the offense, importance of the policy violated, and the defendant's wealth); *Viking Ins. Co. of Wisconsin v. Jester*, 310 Ark. 317, 836 S.W.2d 371, 379 (1992) (holding a ratio between actual damages and punitive damages is one factor to consider); *Kenly v. Ukegawa*, 16 Cal.App.4th 49, 19 Cal.Rptr.2d 771, 776 n. 5 (1993) (holding a ratio between actual damages and punitive damages is one factor to be considered, along with the reprehensibility of the defendant's conduct and the defendant's wealth); *Sheppard v. A.C. & S. Co.*, 484 A.2d 521, 524 (Del.Super.Ct.1984) (holding punitive damages must not be disproportionate to compensatory damages); *Edmark Motors v. Twin Cities Toyota*, 111 Idaho 846, 727 P.2d 1274, 1279 (Ct.App.1986) (holding a ratio between actual damages and compensatory damages is a factor to be considered); *Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co. of Des Moines*, 510 N.W.2d 153, 157 (Iowa 1993) (rejecting an approach to punitive damages "that concentrates entirely on the relationship between actual and punitive damages ..."); *Pringle Tax Serv., Inc. v. Knoblauch*, 282 N.W.2d 151, 154 (Iowa 1979) (holding punitive damages should be reasonably proportionate to the actual damage as shown); *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1560 (10th Cir.1991) (applying Kansas law, and holding a

ratio between actual damages and compensatory damages is a factor to be considered); *Hanks v. Hubbard Broadcasting, Inc.*, 493 N.W.2d 302, 311 (Minn.Ct.App.1992) (holding a ratio between actual damages and compensatory damages is a factor to be considered); *C & C Trucking Co. v. Smith*, 612 So.2d 1092, 1107 (Miss.1992) (holding a ratio between actual damages and compensatory damages is a factor to be considered); *Kraus v. Santa Fe S. Pac. Corp.*, 878 F.2d 1193, 1200 (9th Cir.1989) (applying Oregon law, and holding there should be a reasonable ratio between actual damages and punitive damages); *Davis v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 906 F.2d 1206, 1223 (8th Cir.1990) (applying South Dakota law, and holding there should be a reasonable ratio between actual damages and punitive damages); *Keith v. Murfreesboro Livestock Market, Inc.*, 780 S.W.2d 751, 755 (Tenn.Ct.App.1989) (holding a ratio between actual damages and compensatory damages is a factor to be considered); *Glasscock v. Armstrong Cork Co.*, 946 F.2d 1085, 1095 (5th Cir.1991) (applying Texas law, and holding punitive damages must be reasonably proportionate to actual damages); *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 810 (Utah 1991) (holding the ratio between actual damages and punitive damages is an important element to consider upon judicial review); *Petsch v. Florom*, 538 P.2d 1011, 1014 (Wyo.1975) (holding a ratio between actual damages and compensatory damages is a factor to be considered).

The following states have held punitive damages should be reasonably related to the plaintiff's injury: *Green Oil Co. v. Hornsby*, 539 So.2d 218, 223 (Ala.1989); *Edwards v. Jewish Hosp. of St. Louis*, 855 F.2d 1345, 1352 (8th Cir.1988)

more, Iowa cases have stated that legal precedent is of limited value in evaluating the damage award of a specific case. *Johnston*, 448 N.W.2d at 489; *Ryan*, 422 N.W.2d at 496; *Northrup*, 204 N.W.2d at 861; *McCarthy*, 199 N.W.2d at 369–70.

■ Under Iowa law, as in the federal decisions cited above, the focus is instead on the relationship between the punitive damages award and the harm the defendant's conduct did cause or the *potential harm* it could have caused. *Spaur*, 510 N.W.2d at 867 (" 'our primary focus in review of a punitive damage award is the relationship between the punitive damage award and the wrongful conduct of the offending party.' *Ryan*, 422 N.W.2d at 496."); *Hockenberg*, 510 N.W.2d at 157 ("It is appropriate to consider the magnitude of the *potential harm* that the defendant's conduct would have caused," quoting *TXO*, —— U.S. at ——, 113 S.Ct. at 2722); *Beeman*, 496 N.W.2d at 255 (" 'Punitive damages must be related to the defendant's wrongful conduct.' *Ryan*, 422 N.W.2d at 496. To evaluate whether punitive damages are so excessive that they show the jury was impassioned and prejudiced when awarding them, we consider whether the punitive damage award is reasonably related to the defendant's malicious conduct. *Id.*"); *Johnston*, 448 N.W.2d at 489 (In *Ryan*, "[w]e concluded that our primary focus in reviewing punitive damage awards should be the relationship between the dollar amount awarded and the wrongful conduct of the offending party."); *Ryan*, 422 N.W.2d at 496 (determination of whether punitive damage award is the product of passion and prejudice is based on consideration of "whether the punitive damage award is reasonably related to the malicious conduct of the defendant"). The Iowa Supreme Court concluded in *Hockenberg* that it had recognized something like the potential harm factor as long ago as its decision in *Pringle*:

We believe our approach reflects this [*TXO* potential harm] test. In *Pringle*, for instance, we considered the plaintiff's showing, not the award, of actual damages, in upholding a punitive damages award of $2500. *Pringle*, 282 N.W.2d at 155. The plaintiff's showing of actual damages in *Pringle*, although not "potential harm,"

(applying Missouri law); *Alessio v. Hamilton Auto Body, Inc.*, 21 Ohio App.3d 247, 486 N.E.2d 1224, 1225 (1985); *Continental Trend Resources, Inc. v. Oxy USA, Inc.*, 810 F.Supp. 1520, 1537 (W.D.Okla.1992) (applying Oklahoma law).

The states that no longer consider the ratio between punitive damages and actual damages as important in evaluating the constitutionality of punitive damage awards are: *Schmidt v. Am. Leasco*, 139 Ariz. 509, 679 P.2d 532, 535 (Ct.App. 1983); *Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1366 (10th Cir.1987) (applying Colorado law, and holding a ratio between punitive damages and actual damages is no longer considered; rather, the factors considered are economic status of the defendant, the nature of the act causing the injury, and the deterrent effect of a punitive damage award on others); *Robinson v. Sarisky*, 535 A.2d 901, 907 (D.C.1988); *Horizon Leasing v. Leefmans*, 568 So.2d 73, 75 (Fla.Dist. Ct.App.1990); *Oglethorpe Power Corp. v. Sheriff*, 210 Ga.App. 299, 436 S.E.2d 14, 18 (1993); *Embassy/Main Auto Leasing Co. v. C.A.R. Leasing, Inc.*, 155 Ill.App.3d 427, 108 Ill.Dec. 170, 174, 508 N.E.2d 331, 335 (1987); *Arlington State Bank v. Colvin*, 545 N.E.2d 572, 580 (Ind.Ct.App. 1989) (holding there is no required ratio to actual damages; rather, the factors to be considered are: the nature of the defendant's conduct, the extent of actual damages, and the defendant's wealth); *Fowler v. Mantooth*, 683 S.W.2d 250, 253 (Ky.1984); *Haworth v. Feigon*, 623 A.2d 150, 159 (Me.1993) (holding there is no ratio requirement, but the factors to consider include the degree of outrage with which the factfinder views the defendant's tortious conduct); *Fraidin v. Weitzman*, 93 Md.App. 168, 611 A.2d 1046, 1070 (1992); *Shors v. Branch*, 221 Mont. 390, 720 P.2d 239, 246 (1986); *United Fire Ins. Co. v. McClelland*, 105 Nev. 504, 780 P.2d 193, 199 (1989); *Nappe v. Anschelewitz, Barr, Ansell, & Bonello*, 97 N.J. 37, 477 A.2d 1224, 1231 (1984); *Green Tree Acceptance, Inc. v. Layton*, 108 N.M. 171, 769 P.2d 84, 87 (1989); *Guccione v. Hustler Magazine, Inc.*, 632 F.Supp. 313, 325 (S.D.N.Y. 1986) (applying New York law); *Olmstead v. Miller*, 383 N.W.2d 817, 822 (N.D.1986); *Kirkbride v. Lisbon Contractors, Inc.*, 521 Pa. 97, 555 A.2d 800, 803 (1989) (holding no ratio is required); *but see Pennbank v. St. Paul Fire & Marine Ins. Co.*, 669 F.Supp. 122, 127 (W.D.Pa. 1987) (applying Pennsylvania law, and holding some relation between actual damages and punitive damages is required); *Crump v. P & C Food Mkts., Inc.*, 154 Vt. 284, 576 A.2d 441, 449 (1990); *Jones v. Credit Bureau of Huntington, Inc.*, 184 W.Va. 112, 399 S.E.2d 694, 702 (1990).

The states that consider the relationship between punitive damages and the defendant's conduct are: *Hansel v. Nat'l States Ins. Co.*, —— S.C.App. ——, 437 S.E.2d 159, 162 (S.C.Ct.App. 1993) and *Tucker v. Marcus*, 142 Wis.2d 425, 418 N.W.2d 818, 826 (1988).

constituted a measure of harm analogous to—and perhaps more concrete than—the threat of "potential harm" that the U.S. Supreme Court observed in TXO.

*Hockenberg,* 510 N.W.2d at 157. The Iowa Supreme Court has also authorized the trial court to consider other factors, including the financial worth of the defendant. *Lara,* 512 N.W.2d at 783; *Spaur,* 510 N.W.2d at 867; *Nassen v. Nat'l States Ins. Co.,* 494 N.W.2d 231, 238–39 (Iowa 1992), *cert. denied,* ―― U.S. ――, 113 S.Ct. 1846, 123 L.Ed.2d 470 (1993).

In the present case, the fact that the punitive damages awarded were 250,000 times the actual damages awarded does not carry the weight in the court's analysis that Amoco suggests, as such proportion is but one factor in the court's analysis. Furthermore, the court concludes that of greater weight is the court's belief that the award bore a reasonable relationship to the *potential harm* Amoco's conduct could have caused. Were Amoco or others similarly situated to be undeterred from intruding on the privacy of employees' credit card records to check up on their use of sick leave or for any other purpose, the aggregate invasion of privacy into

sensitive personal matters would be enormous indeed.[49] Any "shocking disparity" between the actual and punitive awards is dissipated when one considers the potential for harm if Amoco persisted in such conduct. *TXO,* ―― U.S. at ――, 113 S.Ct. at 2722.

The jury's award in this case is also reasonable in its relationship to Amoco's financial worth. Amoco's financial worth is such that the jury could have reasonably concluded a punitive damages award must be sufficiently large to fulfill its deterrent and punitive purpose. *Northrup,* 204 N.W.2d at 861 ("There is no set mathematical ratio between actual and exemplary damages," because to be effective in their purposes, "the exemplary damages awarded must be relatively large."). Amoco is a huge corporation with employees worldwide. Pulla's uncontroverted testimony is that Amoco has assets or annual revenue of $25 billion, and employs more than 38,000 people in the United States and over 46,000 worldwide.[50] Transcript of Proceedings, Testimony of Mr. Thaddeus Pulla, Volume III, p. 25. The court concludes in the present case that Amoco had notice of Pulla's intent to seek punitive dam-

49. Brief consideration of the extent of information about an individual revealed by an examination of one's credit card records illuminates the potential harm from an invasion of privacy of those records. This is especially true given the explosive growth in the use and acceptance of credit cards in contemporary society. It was recently reported that "[b]y the end of 1993, consumers had 1.1 billion credit and debit cards, 12 per household." *Credit Card Use, Profits Set Records,* Atlanta J. & Const., June 17, 1994, at E2. In 1992, MasterCard International's sales in the United States grew 13.8 percent to 113 billion, while Visa U.S.A. posted an 11.5 percent increase to 190.4 billion. Each of these giants in consumer credit cards improved on a single-digit growth rate in 1991. Stephen Kleege, *Mastercard and Visa Grew By Doubler Digits in 1992,* Reuters Bus. Rep., Mar. 8, 1993. The use of credit cards for consumer transactions is staggering. It has been estimated that in calendar year 1991 there were more than 5.6 billion credit card transactions. Kenneth Howe, *Visa Banking on Debit Cards,* S.F. Chron., Mar. 16, 1992, at B1. This "plasticazation" of consumer transactions means that credit card records now reveal more intimate details of our lives. This includes information about a person's physical health (doctor's visits, prescriptions, treatments, tests, hospitalizations); mental health (psychiatric, psychological, community mental health and marriage

counseling or therapy); membership in a host of advocacy, recreational, educational, scientific organizations; political affiliations; religious affiliations; travel; magazine and newspaper subscriptions; social and business activities; and a myriad of other personal details.

50. Iowa law does not require a plaintiff to prove a defendant's financial worth before the plaintiff can recover punitive damages. *Latham Seed Co. v. Nickerson Am. Plant Breeders,* 978 F.2d 1493, 1499 (8th Cir.1992) (citing *Hall v. Montgomery Ward & Co.,* 252 N.W.2d 421, 425–26 (Iowa 1977)). In *Latham,* the defendant complained that the jury was presented with no evidence of the defendant's financial condition and argued that awarding the plaintiff punitive damages was therefore improper. *Id.* The court, however, found this argument meritless, noting that the defendant knew the plaintiff was submitting the issue of punitive damages to the jury, and the defendant had the opportunity to introduce its net worth if the defendant was concerned that the jury would perceive its net worth to be more than it actually was. *Id.* In other words, the punitive damage award was not going to be overturned or deemed excessive just because the jury had little information about the defendant's net worth; the defendant had his chance to introduce information and missed it. *Id.* at 1500.

ages, and had the opportunity to dispel any misconceptions about its financial condition based on Pulla's testimony if it feared an inflated punitive damages award, but did not introduce any information to enlighten the jury. The court cannot conclude that the jury's punitive damage award is unreasonable in light of Amoco's financial condition as indicated by Pulla's testimony.

Amoco argues that it specifically instructed the employee involved in this case that such a thing as examination of an employee's credit card records to check up on their use of sick leave must not happen again. Amoco therefore argues that its conduct was not part of a pattern, was not concealed, and that Amoco took appropriate action as soon as it became aware that Pulla's credit card records had been reviewed. Amoco seems to argue that it had no culpability for the initial invasion of Pulla's records. These factors, Amoco argues, indicate the unreasonableness of the punitive damages awarded. However, the court again notes that although Mr. Wieczorek reprimanded Ms. Leckband for examining Pulla's credit card records, and told her not to repeat this behavior, Mr. Wieczorek immediately ordered a copy of these same credit card records and authorized another Amoco employee to gain access to these records for purposes of copying them. Consequently, it is likely that at least two people read these credit card records *after* Ms. Leckband's inappropriate conduct. Furthermore, Mr. Wieczorek's conduct in reprimanding Ms. Leckband for examining Pulla's records, then covertly engaging in the same conduct by ordering a copy of Pulla's records from a different employee, Diana Scott, is further evidence that Mr. Wieczorek knew his conduct was wrong. Amoco's conduct was not the isolated and brief incident its argument suggests. More telling still is the fact that although Mr. Wieczorek concluded that Ms. Leckband's tactics were improper and instructed her that they must not be repeated, Mr. Wieczorek referred to the same absences Leckband had used the credit card records to investigate in Pulla's subsequent employee evaluation. Mr. Wieczorek's knowledge of these absences was at least in part based on Ms. Leckband's reading of Pulla's credit card records; therefore, Mr.

Wieczorek used the information improperly obtained in evaluating Pulla's work performance. Amoco is culpable and liable for the improper conduct because Mr. Wieczorek at the very least reinforced and repeated the challenged behavior himself after acknowledging that it was wrong. An Amoco managerial employee, Mr. Langlois, also testified to his belief that the kind of conduct engaged in here was wrong or illegal. Although Amoco argues that there was no concealment of wrong-doing in this case, Mr. Wieczorek did not disclose Ms. Leckband's or his own surreptitious review of Pulla's credit card records voluntarily. Rather, Pulla learned of the review of his records from other, undisclosed employees in telephone calls. Furthermore, immediately after telling Ms. Leckband that her conduct had been improper, Mr. Wieczorek covertly ordered another employee to make a copy of Pulla's credit card records which he then placed in Pulla's personnel file, all without disclosing his conduct to Pulla. The court concludes that Amoco concealed its wrong-doing and would have made no disclosure of its review of Pulla's credit card records had Pulla not learned of it from other sources. Consideration of these factors does not, as Amoco has argued, suggest that the punitive damages award in this case was unreasonable.

The court concludes that none of the other factors identified by Iowa or federal courts mitigate strongly against this punitive damages award. Amoco is correct in arguing that it did not profit directly from its misconduct, but the court concludes that Amoco could have benefited financially from chilling employees' use of sick leave, even if that use was legitimate, if employees feared improper and invasive investigation any time they claimed sick leave. Although there was no evidence that Amoco engaged in improper conduct similar to that found in this case in the past, or that Amoco has been subjected to other civil awards against it for the same conduct, and no criminal sanctions have or could have been imposed for Amoco's conduct, the court can only conclude that it was not unreasonable for the jury to seek to deter Amoco from such behavior in the future so that no pattern of this kind of miscon-

duct would ever develop. Finally, nothing arising from the substance or presentation of the evidence at trial, the conduct or arguments of counsel, or any of the trial dynamics, suggest in any way that the jury's verdict was the result of passion or prejudice and therefore excessive. Amoco's motions must be denied as to the award of punitive damages in this case.

The court's conclusions in disposition of Amoco's challenges to the award and size of punitive damages in this case are summarized in the chart below.

| Disposition Of Challenges To Punitive Damages Verdict | | |
|---|---|---|
| **Amoco's Challenge** | **When Raised** | **Disposition On The Merits** |
| 1. Sufficiency of Evidence | May 6 Jury Instruction general objection | |
| a. Of Malice | Post–Trial Motions | *Rule* 50: Sufficient evidence for reasonable jury to conclude that Leckband acted with actual malice because her conduct was motivated by ill will in examining Pulla's confidential records. Sufficient evidence of legal malice in Wieczorek's continuation of conduct acknowledge to be wrong by both Wieczorek and another managerial employee. <br> *Rule* 59: Evidence is sufficient on court's review to preclude new trial. |
| b. Of Ratification | May 9 Jury Instruction Conference as to invasion of privacy instruction, but not as to punitive damage instruction | *Rule* 50: Sufficient evidence for reasonable jury to find Wieczorek had managerial capacity and ratified or approved Leckband's wrongful conduct by engaging in similar conduct when he had another employee copy records and delivered them himself to the personnel department. Wieczorek's conduct itself constituted wrongful acts by an employee with managerial capacity. <br> *Rule* 59: Evidence is sufficient on court's review to preclude new trial. |
| 2. Lack of actual damages | Post–Trial Motions | *Rule* 50: Sufficient evidence for reasonable jury to find actual damages, even though insufficient evidence to determine amount or amount was small. <br> *Rule* 59: Actual damages were both shown and awarded, so predicate for award of punitive damages was present. |
| 3. Excessive and violative of due process | Post–Trial Motions | Award did not have to be in proportion to award of actual damages but in proportion to potential harm to plaintiff and others from Amoco's conduct, which was enormous. Award was appropriate to deter similar wrong-doing by Amoco and others, appropriate in light of Amoco's financial condition, and Amoco was culpable for the wrong-doing. An Amoco managerial employee testified to his belief that the kind of conduct engaged in here is wrong or illegal. |

### E. Remittitur

Failing any other post-trial relief, Amoco argues that the court should order a remittitur of the punitive damage award in this case.[51] The Eighth Circuit Court of Appeals has held that "[a] district court should grant remittitur only when the verdict is so grossly excessive as to shock the court's conscience." *Norton v. Caremark, Inc.*, 20 F.3d 330, 340 (8th Cir.1994) (citing *Am. Business Interiors, Inc. v. Haworth, Inc.*, 798 F.2d 1135, 1146 (8th Cir.1986)); *Kientzy v. McDonnell Douglas Corp.*, 990 F.2d 1051, 1061–62 (8th Cir.1993) (also quoting *Haworth*); *Benny M. Estes & Assocs., Inc. v. Time Ins. Co.*, 980 F.2d 1228, 1235 (8th Cir. 1992) (also quoting *Haworth*). Because the appellate court " 'recognize[s] that the trial court has heard the evidence and knows the community's standards,' " the denial of remittitur will be reviewed only "for 'a manifest abuse of discretion,' " and will be reversed " 'only when in rare circumstances [the appellate court is] pressed to conclude that the verdict represents a monstrous or shocking injustice.' " *Id.* (quoting *Haworth*); *Kientzy*, 990 F.2d at 1061–62 (also quoting *Haworth*); *Benny M. Estes*, 980 F.2d at 1235 (also quoting *Haworth*).

The standard for remittitur applied by the Iowa Supreme Court is similar:

> We have previously stated that when the "verdict is so flagrantly excessive that it goes beyond the limits of fair compensation ... and fails to do substantial justice between the parties, it is our duty to correct the error by granting a new trial or requiring a remittitur on pain of the grant of a new trial." *Sallis v. Lamansky*, 420 N.W.2d 795, 800–01 (Iowa 1988); *see also Ferris v. Riley*, 251 Iowa 400, 414, 101 N.W.2d 176, 184 (1960). In determining whether the damage award is excessive, we must abide by the principle that each case depends upon its own facts, and pre-

cedents are of little value. *Ferris*, 251 Iowa at 412, 101 N.W.2d at 183.

*Rees*, 461 N.W.2d at 840. More recently, the Iowa Supreme Court, while recognizing its persistence "in a resolute unwillingness to grant remittiturs in damage awards," stated that it read the United States Supreme Court's decision in *Oberg*, —— U.S. ——, 114 S.Ct. 2331, as "a signal to order remittitur if appropriate." *Ezzone*, 525 N.W.2d at 399 (citing *Team Cent., Inc. v. Teamco, Inc.*, 271 N.W.2d 914 (Iowa 1978), as indicative of its unwillingness to grant remittiturs). The Iowa court therefore stated that

> [t]his and future reviews will be conducted on the basis of principles previously announced in punitive damages cases. Awards will be tested with a view of the extent and nature of the outrageous conduct, the amount necessary for future deterrence, and with deference to the relationship between the punitive award and plaintiff's injury, as reflected in any award for compensatory damages. In addition to these traditional factors, we shall consider all circumstances surrounding the conduct and relationship between the parties.

*Id.* (finding on the conduct and relationship factor of the analysis that the plaintiff's conduct "was provoking as well as provoked"). Applying these factors, the court ordered remittitur of the punitive damages awards because the court found that the punitive damages awarded the plaintiff were "out of proportion to any amount needed, in addition to compensatory awards, for deterrence purposes." *Id.*

The court has thoroughly reviewed the evidence in this case, and finds, for all the reasons stated above, that the award of punitive damages here is not so grossly or flagrantly excessive as to shock the court's conscience. Furthermore, in light of the conduct and relationship between the parties, the punitive damages award is appropriate.

---

51. The United States Supreme Court recently examined the history of remittitur as well: [R]emittitur—withdrawal of new trial if the plaintiff agreed to a specific reduction of damages—may have been an innovation [in] *Dimick v. Schiedt*, 293 U.S. 474, 482–485 [55 S.Ct. 296, 299–301, 79 L.Ed. 603] (1935). On the other hand, remittitur may have a better historical pedigree than previously thought. *See*

*King v. Watson*, 2 T.R. 199–200, 100 Eng.Rep. 108 (K.B.1788) ("[O]n a motion in the Common Pleas to set aside the verdict for excessive damages ... the Court recommended a compromise, and on *Hurry's* agreeing to accept 1500 [pounds] they discharged the rule"). *Oberg*, —— U.S. at ——, n. 3, 114 S.Ct. at 2337 n. 3.

Pulla did nothing to provoke Amoco's use of such an intrusive method of investigation, which Amoco attempted to undertake surreptitiously. Finally, the court finds that the amount awarded Pulla is not out of proportion to the amount needed for deterrence purposes. The court therefore declines to order remittitur.

## III. CONCLUSION

The court concludes that Amoco's post-trial motions for judgment as a matter of law, and for new trial or remittitur must be denied. Amoco waived its right to move for judgment as a matter of law post-trial by failing to reassert its first motion for judgment as a matter of law at the close of all evidence as required by *Fed.R.Civ.P.* 50. In light of the amount of testimony and other evidence presented after the first motion for directed verdict, amounting to a full day of trial, and the issues raised in that testimony, Amoco's failure to reassert the motion was not a "de minimis" departure from standard procedures, but a major oversight. Nor does the court find that its decision to take the first motion for judgment as a matter of law under advisement, either alone or in conjunction with any other circumstances presented here, excused Amoco from compliance with the reassertion requirement. Nor did Amoco's objections to jury instructions substitute for reassertion of the motion for judgment as a matter of law because none of its objections raised in the first motion for judgment as a matter of law was raised again in objections to jury instructions. On the basis of this conclusion, Amoco was at most entitled to assert a post-trial motion for new trial.

However, Amoco failed to preserve all but one of its claims of error for consideration in a motion for new trial by failing to provide adequate objections, or failing to object at all, to relevant jury instructions. The court concludes that Amoco's objection to punitive damage instructions on the basis of "lack of evidence" did not state distinctly or specify its later objection and the grounds therefor in which it asserted lack of evidence of *malice*. The court was not persuaded by the argument that "malice" is the essence of a punitive damages award under Iowa law, finding instead that there are no less than four factual inquiries for a jury to resolve on

the basis of the evidence presented: actual damages, malice, deterrence, and, in a case like this one involving a corporation as the defendant, ratification. A shotgun objection should not be sufficient to preserve a rifle shot issue. On the other hand, Amoco offered a sufficiently distinct and specific objection to the instruction on ratification as a requirement for liability on the invasion of privacy claim to preserve that issue for consideration on a post-trial motion for new trial. Amoco's objection to the ratification element of the invasion of privacy instruction, however, did not preserve the issue of ratification as it relates to punitive damages. To allow an objection to the underlying claim to stand as an objection to the companion punitive damages claim, however closely the elements of each may intertwine, would be to excuse a party from the requirements of *Fed.R.Civ.P.* 51 that objections to instructions be stated distinctly and with specificity.

Although the court concluded that only one issue, ratification as an element of an invasion of privacy claim against a corporation, was preserved for consideration on a post-trial motion for new trial, the court nonetheless, in the alternative, considered all of Amoco's challenges to the verdict in this case against both the standards for granting a judgment as a matter of law and a new trial. The court concludes that Amoco is not entitled to any post-trial relief. As to Amoco's challenges to the verdict finding liability for an invasion of privacy, the court finds sufficient evidence in the record from which a reasonable jury could conclude that Pulla suffered mental pain, embarrassment, indignation, and humiliation as the result of Amoco's unwarranted review of his credit card records, and the court so finds upon its own review. The injuries Pulla complained of, though perhaps not of the "extreme" degree Amoco argued was required to sustain the claim, were nonetheless sufficient under the formulation of damages for invasion of privacy found in the Restatement (Second) of Torts § 652H, in that they were of a kind normally suffered as the result of such an invasion, and were normal and reasonable in their extent. The court concludes that a jury could reasonably find, and the court agrees, that Amoco had no legitimate interest in

reviewing Pulla's credit card records that outweighed its intrusive methods of using confidential records for a purpose for which they were never intended, surreptitiously, without notice to, or consent or knowledge of, the cardholder. The court concludes that a reasonable jury could, and the court itself does, find that Amoco's methods were offensive to a reasonable person. Finally, the court concludes that a reasonable jury could, and the court does, find that Amoco ratified the wrongful acts of its employee when an employee with managerial capacity, Mr. Wieczorek, acknowledged that conduct was wrong, but immediately engaged in it himself covertly. The jury reasonably could, and the court does, conclude that Mr. Wieczorek himself engaged in wrongful conduct committed in the scope of his employment as a supervisor, and, by virtue of his managerial capacity as a supervisor over two "lead" employees and several other employees, bound Amoco for his wrongful acts.

The court concludes that Amoco's challenges to the award of punitive damages in this case must also fail on their merits. On the basis of the record here, the court concludes that a reasonable jury could, and the court does, find that Ms. Leckband acted with ill will toward Pulla when she reviewed his records, thus providing sufficient evidence of actual malice to support a punitive damages claim. Furthermore, on the basis of the record here, a reasonable jury could, and the court does, find that Mr. Wieczorek acted with legal malice when he continued conduct he acknowledged to be wrong. The court's conclusions concerning ratification on the invasion of privacy issue summarized above also stand as its conclusions on this issue as to the punitive damages claim. Furthermore, the court concludes that on the record here, a reasonable jury could, and the court does, find that there was at least a showing of actual damages providing the essential predicate for an award of punitive damages under Iowa law.

Finally, on Amoco's assertion that the award of punitive damages in this case is excessive, the court concludes that the award did not have to bear a particular proportion to the actual damages awarded, but to the potential harm to Pulla and others that Amoco's wrongful conduct could have caused, which was enormous. The size of the punitive damage award was also appropriate to deter similar wrong-doing by Amoco and others, appropriate in the light of Amoco's financial condition, Amoco's culpability for the wrong-doing suffered by Pulla, and Amoco's concealment of that wrong-doing. The award of punitive damages in this case does not shock the court's conscience such that it feels compelled to order a remittitur. Thus, Amoco's post-trial motions for relief from the jury's verdict in this case are denied.

**IT IS SO ORDERED.**